721 So.2d 380 (1998)
Rocco MALLARDI, Petitioner,
v.
Ken JENNE, Sheriff of Broward County, and Maria Mallardi, Respondents.
No. 98-3598.
District Court of Appeal of Florida, Fourth District.
November 6, 1998.
*381 Nancy W. Gregoire and Katherine O. Birnbaum of Bunnell, Woulfe, Kirschbaum, Keller, Cohen & McIntyre, P.A., Fort Lauderdale, for petitioner.
Robert L. Bogen of Law Offices of Robert L. Bogen, Boca Raton, for respondent Mallardi.
No appearance required for respondent Jenne.
FARMER, J.
We have before us a petition for habeas corpus alleging that the present confinement for failing to pay alimony is illegal. We deny the writ.
Petitioner is the former husband of respondent Mallardi. In their dissolution of marriage case they entered into a marital settlement agreement which provided for lump sum and permanent alimony. The final judgment incorporated the agreement and ordered the former husband to make the payments he had agreed to make. Later he filed a proceeding to modify the alimony ordered in the final judgment. At the conclusion of the modification proceedings, the trial court found that the former husband had entered into a scheme with members of his family (his parents, sister and brother-in-law) to render himself ostensibly unable to pay the agreed alimony. In fact, the court found, he continued to have the same access to funds in the family business, a restaurant, as he enjoyed before the scheme. The court also found that various transfers of a home and the business were part of the same scheme to make him appear reduced in income and assets. Denying the modification, the court found that the former husband was in arrears of the agreed alimony for more than $88,000.[1]
Several weeks later after a contempt hearing the same trial judge adopted her previous findings, adding that the failure to pay was willful, that the former husband continued to have the ability to pay what he had agreed to pay, and further that he had the present ability to pay all of the arrearages. The court thereupon ordered him confined in the Broward County jail and set a purge *382 amount equal to the arrearages, $88,000. He then filed the present petition for habeas corpus, arguing that his confinement is illegal because he lacks the ability to pay the purge amount.
It is safe to say that the trial judge simply did not believe the former husband or his witness. The trial court focused on the testimony of the former husband and his accountant at the modification hearing that the former husband had paid himself $1,800 weekly out of the cash drawer, as well as his employees and suppliers. The court found that the result of this business practice of paying in cash was to reduce the business's reported income by the cash payments to the employees and suppliers. The court explained:
"the [payments] are used to further decrease what is actually paid in the bank or deposited in the bank, and the cost of running a business is then similar, or the same was what it would be if they were paying all of their income: cash, credit cards and checks, into the bank. But in fact, their gross income does not declare cash. Now I found that so unusual as part of the testimony that I found it extraordinary that people would come to court and tell me this as a matter of course. But in fact they did. And they didn't just only tell me once; they told me on numerous occasions as though it was the standard way of doing business."
The court noted the evidence that the brother-in-law had ostensibly purchased the business for $200,000, saying that the amount of the purported purchase was "curiously around the amount of money that it takes to get an investor visa to live in the United States."[2] The court found that the brother-in-law and the Mallardi family had concocted a scheme to give the brother-in-law residency in the United States and to give the former husband an apparent inability to pay for the contracted alimony.
The court concluded that former husband was performing the same functions he had performed when the final judgment was originally entered, i.e. managing the family business. It further concluded that it had no reason to believe that former husband was not continuing to pay himself out of the cash register. Again, the court referred to former husband's family and said that his continuing connection with the business belied any testimony that he was not earning the same $1,800 weekly cash income.
As regards a purge amount the court found as follows:
"So what is the source of Mr. Mallardi's ability to pay his alimony? It is the cash drawer of [the business], from which this court believes he has been taking at least $1,800 a week for the last three years since the dissolution of marriagejust as he took the $1,900 a week plus for the years prior to the [dissolution]. And how much does that amount to? ... $280,000 for three years. And I think that Mr. Mallardi has the ability to pay."
The court stated that the amount of the purge would be "exactly what he was ordered to pay." Former husband's counsel asked whether the trial court was making a finding of petitioner's ability to pay $280,000. The court responded as follows:
"Over the last three years this court finds that he had access to the cash drawer at [the restaurant]. That he always had access to the cash drawer. He testified that he had $1,800 a week from the cash drawer from his salary. Now he's testified as to a lifestyle of something predicated onwhat is it?$880 a week.... And it has occurred from the last three years. And he has the ability to pay what he owes her. I don't find that he had any difference in his income from the day he was divorced till now. I don't think anything has changed in Mr. Mallardi's life except that financially he and his family have concocted a ruse to get him out of paying his alimony."
The former husband argues that the record does not support the finding that he has the *383 present ability to pay $88,000 to get out of jail.
In 1992 the legislature amended section 61.14 to provide the following:
"When a court of competent jurisdiction enters an order for the payment of alimony or child support or both, the court shall make a finding of the obligor's imputed or actual present ability to comply with the order. If the obligor subsequently fails to pay alimony or support and a contempt hearing is held, the original order of the court creates a presumption that the obligor has the present ability to pay the alimony or support and to purge himself or herself from the contempt. At the contempt hearing, the obligor shall have the burden of proof to show that he or she lacks the ability to purge himself or herself from the contempt. This presumption is adopted as a presumption under s. 90.302(2) to implement the public policy of this state that children shall be maintained from the resources of their parents and as provided for in s. 409.2551, and that spouses be maintained as provided for in s. 61.08." [emphasis supplied]
§ 61.14(5)(a), Fla.Stat. (1997). The evidence code provides for two kinds of rebuttable presumptions: one affecting the burden of producing evidence, which vanishes upon the introduction of contrary evidence;[3] and another affecting the burden of proof, which remains throughout the proceeding.[4] The legislature has made clear in section 61.14(5)(a) that the presumption of ability to pay the purge amount is of the latter kind and therefore affects the burden of proof. The former husband thus had the burden at the contempt hearing to prove that he lacked the ability to pay the purge amount.
The court was required to consider all assets and property interests of the payor of alimonycash as well as real property and business interestsin deciding the issue of the ability to pay.[5] From the evidence it appeared that there were two possible sources of paying a purge: (1) the cash flow from the business, and (2) the value of the house he had fraudulently transferred to his brother-in-law and the value of his interest in the business itself. The trial judge did not believe his testimony or that of his accountant. The court found that the purported transfers of title in the business and house, as well as the purported changes in the operation of the business, were all part of the same scheme to make it appear that he now lacks the ability to pay the agreed alimony and to get the brother-in-law residency in this country.
We contrast the record in this case with that in Apa v. Apa, 693 So.2d 702 (Fla. 4th DCA 1997), where we reversed only because there was no record evidence to show that the former husband there continued to control business funds despite his purported sale of the business. In this case there is substantial evidence to support the trial judge's finding. Here the court could properly have found that the former husband simply failed to carry his burden of proving that he could not acquire the purge amount from the cash flow of the business or from the value of the house or his interest in the business itself, or even from some combination of the two.[6]
*384 We conclude that the former husband has failed to demonstrate that his confinement is illegal and thus deny the writ.
WARNER and KLEIN, JJ., concur.
NOTES
[1] He has appealed the final order denying modification. Recently his lawyer sought and was granted leave to withdraw from the appeal. The same lawyer has appeared on his behalf in this petition for habeas corpus.
[2] The court also found that the brother-in-law had recently filed bankruptcy in Canada where he was previously domiciled. She obviously did not believe that he could be bankrupt and at the same time make a genuine $200,000 investment.
[3] § 90.302(1), Fla.Stat. (1997) ("A presumption affecting the burden of producing evidence and requiring the trier of fact to assume the existence of the presumed fact, unless credible evidence sufficient to sustain a finding of the nonexistence of the presumed fact is introduced, in which event, the existence or nonexistence of the presumed fact shall be determined from the evidence without regard to the presumption.").
[4] § 90.302(2), Fla.Stat. (1997) ("A presumption affecting the burden of proof that imposes upon the party against whom it operates the burden of proof concerning the nonexistence of the presumed fact.").
[5] See § 61.08(2)(d) and (g), Fla.Stat. (1997) (in setting alimony the trial court shall consider "[t]he financial resources of each party" and "[a]ll sources of income available to either party").
[6] Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997), is not to the contrary. Both the plurality and the concurring judges in that case, a clear majority, necessarily concluded that section 61.14(5)(a) was not applicable because it was adopted after entry of the final judgment of dissolution of marriage fixing the child support. There is no question that section 61.14(5)(a) is applicable in this case and controls the burden of proof.