NELSON, DEBRA STEINBERG, Associate Judge.
Husband appeals the contempt order entered against him for his failure to pay certain family expenses, including Wife’s temporary litigation expenses as ordered in the Order Granting Wife’s Motion for Temporary Relief. Husband argues that the trial court erred in refusing to allow him sufficient time in which to defend against the motion for contempt. Husband also argues that there was no competent, substantial evidence to support the finding that he had the ability to pay the purge amount, totaling in excess of $12,500. We reverse and remand for further proceedings.
Wife filed a petition for dissolution of marriage on July 8, 1999. According to the petition, the parties were married on July 28, 1989 and separated on April 12, 1999. Three minor children were born of this marriage. Wife sought temporary and permanent use of the marital home, residential custody of the minor children, temporary and permanent alimony, and child support. In her petition, Wife alleged that Husband owned a business called Discount Rental & Sales, located in *531 West Palm Beach. Husband filed a counter-petition for dissolution of marriage on February 24, 2000.
On March 7, 2001, the court entered an Order Granting Wife’s Motion for Temporary Relief. While Wife appeared with counsel, Husband was unrepresented. Husband maintains that after his first attorney was permitted to withdraw on February 5, 2001, the court refused to provide Husband time to obtain new counsel, and thus, heard Wife’s motion without the benefit of Husband having representation at the hearing.
The court in its Order Granting Wife’s Motion for Temporary Relief found that the Husband was self-employed and earned in excess of $100,000 per year, “although exact determination is difficult.” The court held that historically, during the parties’ separation, Husband paid certain expenses.
The court ordered that Wife have temporary primary residential custody and have temporary possession of the marital home. Husband was ordered to pay the following: mortgage on marital home; household expenses for marital home as specified in Wife’s financial affidavit, including utilities; Wife’s automobile payment; children’s private school tuition; parties’ credit cards; and Wife’s health and car insurance. Husband was ordered to bring current any expenses which might be in arrears, pay the children’s health insurance and pay Wife $300 per month in temporary alimony. Husband was also ordered to pay Wife’s temporary litigation expenses in the amount of $9,000 and Wife’s temporary forensic accounting expenses in the amount of $3,500.
Thereafter, Wife filed an amended motion for contempt and a one hour hearing was set for June 14, 2001. Prior to the hearing Husband filed a motion to extend the time for hearing Wife’s amended motion for contempt and wrote a letter to the court explaining the need for additional time. Husband claimed that the court’s allotment of one hour for the hearing was insufficient. Husband’s motion was denied.
At the June 14, 2001 contempt hearing, the court stated that it was giving the parties’ one hour, with thirty minutes a side. Wife testified that Husband violated the terms of the Order Granting Temporary Relief by failing to pay Wife’s counsel and CPA. She also claimed that Husband failed to pay her health insurance, household expenses, children’s school tuition, Wife’s credit cards, and one month of alimony was returned for insufficient funds.
Wife’s CPA, Julie Hershman, specializing in forensic accounting, testified at the temporary relief hearing and at the contempt hearing. For the contempt hearing, Hershman prepared an updated schedule of an analysis of Husband’s Fidelity Federal bank account and went over with Wife what bills were outstanding. Hershman explained that she took all of the deposits into Husband’s account for the year and his payments out of the account and averaged them for a monthly amount. Based on this analysis, she opined that Husband had an average monthly deposit into his account for the year 2000 in the amount of $37,568. Through April 2001, he had an average of $19,894. Based on examination of his account, Hershman opined that Husband had an ability to pay the court’s temporary relief order.
On cross-examination, however, Hersh-man acknowledged that she based her opinion on the assumption that the money coming into Husband’s account was income to him. Hershman acknowledged that whatever money was deposited in a given month, a similar amount was taken out for that month. Hershman did not know *532 where the monies were going and acknowledged that if the monies did not belong to Husband and he was using the account as a trust account, i.e., for his father, her theory that he had ability to pay would “go to pieces.” Hershman did not know if Wife ever requested documents to substantiate what the withdrawals of money were used for.
Husband testified that he had paid the mortgage, the car and the electric bill. Husband said Wife’s phone was disconnected and that she had a new number. He also stated that he was unable to pay Wife’s attorney and CPA, but that he had paid Wife more than $300 a month.
Husband testified that his income declined when he sold his business in February 2000, after sustaining injuries in four accidents, three of which were car accidents. Husband received approximately $200,000 over a period of a year and a half from the sale of the business, which the accountant attributed to him as income. Husband explained that the money from the sale of the business was used to support the couple’s lifestyle. Husband stated that his and Wife’s bills had been $30,000 a month for two and a half years.
Husband stated that approximately $90,000 was put into his account in 1999 from the sale of property belonging to his father in 1998 and that some of the monies in his account were from rental monies belonging to his father which he collected and then forwarded to his father out-of-state. In addition, Husband stated that he received several loans and notes from his father ($65,000 and $33,000) in order to stay afloat and pay his obligations. Husband produced several notes depicting the loans.
Husband also stated that he and his father went into a business proposition with a friend and that $25,000 was put into his account for a deposit on the business, but that they lost the money when the friend took the money. Due to lack of time, Husband was unable to finish his direct testimony or call any corroborating witnesses. No closing arguments were permitted.
At the conclusion of the hearing, the court granted Wife’s amended motion for contempt finding that Husband willfully refused to pay certain family expenses, including Wife’s temporary litigation expenses, and that he had an ability to pay. Husband was given twenty days to pay a purge amount of $12,500 for Wife’s temporary litigation expenses and those expenses for Wife’s accountant, or face incarceration. The court also awarded Wife’s counsel $1,000 in attorney’s fees in connection with the contempt hearing.
The court’s refusal to allow Husband sufficient time in which to defend against the motion for contempt, especially in light of the fact that he alerted the court to the complex issues involved and the need to call certain witnesses to explain the reason for his inability to pay, was clearly error and a denial of Husband’s due process. See Walker v. Edel, 727 So.2d 359 (Fla. 5th DCA 1999), where, in reversing the trial court the Fifth District held as follows:
The trial court’s refusal to hear Walker’s defense was clearly error, which affected the issue before the court. The former wife put on evidence of Walker’s failure to pay the ordered amounts and evidence that at least suggested Walker had the ability to pay. Walker had the burden of demonstrating that he no longer had the ability to make the payments ordered in the dissolution judgment and had the due process right to put on whatever evidence he could to carry that burden. See Pettry v. Pettry, 706 So.2d 107, 108 (Fla. 5th DCA 1998) *533 (“Due process requires that a party be given the opportunity to be heard and to testify and call witnesses on his behalf, and the denial of this right is fundamental error.”) (citations omitted).
Id. at 360-61.
Here, the denial of Husband’s due process rights is especially harmful in light of the fact that Husband was denied a continuance to obtain new counsel and was ultimately unrepresented at the hearing on Wife’s motion for temporary relief. It was at this hearing Husband was ordered to pay various expenses, including temporary alimony, child support, household expenses, insurance and Wife’s counsel and CPA’s fees.
Based on Walker and Pettry, Husband was denied the opportunity to demonstrate that he did not have the ability to make the payments as ordered by the court and was denied his due process right to put on whatever evidence he could to carry his burden.
Husband also contends that there was no competent, substantial evidence to support the finding that he had the ability to pay the purge amount, totaling in excess of $12,500.
Again, the only evidence submitted by Wife that Husband had the ability to pay was Wife’s CPA who assumed that the monies coming in and out of Husband’s personal account was income. She acknowledged on cross-examination that she based her opinion on the assumption that the money coming into Husband’s account was income to him. She did not know where the monies were going and acknowledged that if the monies did not belong to Husband, and he was using the account as a trust account for his father, her theory that he had ability to pay would “go to pieces.”
Husband did not have the opportunity to adequately present his case and refute Wife’s expert opinion. A party cannot be incarcerated for civil contempt if he lacks the present ability to pay the purge amount, even where the party intentionally divested himself of that ability. See Walker, 727 So.2d at 361. A court is required to consider all assets and property interests of the obligor, including cash as well as real property and business interests. See Mallardi v. Jenne, 721 So.2d 380, 383 (Fla. 4th DCA 1998); § 61.14, Fla. Stat. (2000).
Here, the court did not consider all of Husband’s assets. It merely relied upon the opinion of Wife’s expert, who looked solely at Husband’s account. Because Husband was unable to fully present his case, Husband was unable to carry his burden in demonstrating he did not have the ability to pay the purge amount. Thus, the court did not have competent, substantial evidence with which to find that Husband was in willful contempt of the court’s order granting Wife temporary relief.
The contempt order is reversed and the cause remanded for a new contempt hearing where the parties can fully present their evidence.
REVERSED and REMANDED for further proceedings.
TAYLOR, J., concurs.
SHAHOOD, J., dissents with opinion.