617 So.2d 807 (1993)
Charles A. SEARS, husband, Appellant,
v.
Susan SEARS, wife, Appellee.
No. 92-1990.
District Court of Appeal of Florida, First District.
April 29, 1993.
*808 Herbert T. Sussman of Boyer, Tanzler & Boyer, Jacksonville, for appellant.
W.K. Lally, Jacksonville, for appellee.
PER CURIAM.
In this appeal[1] from an order finding him in contempt of court for failing to pay court ordered child support, the Husband, an accountant, contends that the trial judge abused his discretion in refusing to let him testify or to let his attorney present argument, and in finding him in contempt without finding that he had the present ability to pay the child support arrearages, citing Bowen v. Bowen, 471 So.2d 1274 (Fla. 1985). We agree and quash the order.
As averred in appellant's motion to reduce the child support which was included in the record, the predecessor judge who issued the temporary support order on which the contempt order is based "heard testimony that the Husband had diverted funds in his partnership to a separate account, and the Court was of the opinion that the Husband had been double dipping and was able to pay $300.00 per week as and for child support." At the hearing on the motion for contempt, the parties agreed that appellant had not paid $1500 in child support. His attorney presented the testimony of an economics professor who had reviewed the accounting firm's books and the testimony of appellant's partner, who kept the books. After the judge had intensively questioned the partner regarding the disparity between his and appellant's incomes, the following colloquy occurred:
THE COURT: All right, gentlemen. I have got another hearing I have got to get to.
Let me say this, Mr. Sears: I don't do books. I am not interested in it. I think you have got a terrible record. You are a deceitful individual. Your partner has testified to your deceitfulness.
You were ordered to pay $1500. I am ordering you to a sentence of 60 days of jail. You can purge on the payment of $1500.
This thing about whether you collect your money, you are too deceitful and I do not intend  don't come back before me again, do you understand, on nonpayment of child support?

*809 If you will, take Mr. Sears and take him over to the jail. Thank y'all very much.
MR. SUSSMAN: Judge, may I say something?
THE COURT: No. I am sorry. My hearing is finished.
MR. SUSSMAN: I was going to present his testimony.
The hearing had lasted forty minutes.
The written order entered eight days later, nunc pro tunc to the date of the hearing, adjudged appellant in contempt, finding that he "had the ability to pay child support as ordered but failed to do so and has the present ability to pay the arrearage" and stating that he had been taken into custody to serve sixty days as sentence for the contempt, but that he may purge the contempt and be freed from incarceration by paying $1500 "so as to cure the arrearage in the child support."
In Bowen v. Bowen, the supreme court noted that because the purpose of a civil contempt proceeding is to obtain compliance on the part of a person subject to an order of the court, incarceration must be used only when the contemnor has the ability to comply, since this ability to comply is the contemnor's "key to his cell." 471 So.2d at 1277. The court held that "incarceration cannot be imposed upon a civil contemnor for willfully failing to comply with a court order unless the court first determines that the contemnor has the present ability to purge himself of contempt." Id. at 1278. The court then set out the correct procedure for establishing civil contempt in family support matters:
In these cases, the initial order or judgment directing a party to pay support or alimony is predicated on an affirmative finding that the party has the ability to pay. This initial judicial determination creates, in subsequent proceedings, a presumption that there is an ability to pay. In a civil contempt proceeding for failure to pay child support or alimony, the movant must show that a prior court order directed the party to pay the support or alimony, and that the party in default has failed to make the ordered payments. The burden of producing evidence then shifts to the defaulting party, who must dispel the presumption of ability to pay by demonstrating that, due to circumstances beyond his control which intervened since the time the order directing him to pay was entered, he no longer has the ability to meet his support obligations. The court must then evaluate the evidence to determine whether it is sufficient to justify a finding that the defaulting party has willfully violated the court order. Once the court finds that a civil contempt has occurred, it must determine what alternatives are appropriate to obtain compliance with the court order. If incarceration is deemed appropriate, the court must make a separate, affirmative finding that the contemnor possesses the present ability to comply with the purge conditions set forth in the contempt order. In determining whether the contemnor possesses the ability to pay the purge amount, the trial court is not limited to the amount of cash immediately available to the contemnor; rather, the court may look to all assets from which the amount might be obtained.
Id. at 1278-79.
The order adjudging appellant in contempt of court is QUASHED and the case is REMANDED to the trial court for further proceedings consistent with Bowen.
The trial judge is instructed to allow appellant to testify before making a determination of whether he willfully failed to comply with the court order on temporary support. Cf., In the Interest of G.H. III, 617 So.2d 422 (Fla. 1st DCA 1993). If the trial judge thereafter finds appellant in contempt of court, Bowen requires him to determine whether appellant has the present ability to purge himself before imposing incarceration as a sanction for the contempt.
SMITH, BARFIELD and MICKLE, JJ., concur.
NOTES
[1] The language of rule 9.130 does not appear to include orders of contempt, indicating that the non-final contempt order would be reviewable by certiorari under rule 9.030(b)(2)(A). However, in Langbert v. Langbert 409 So.2d 1066 (Fla. 4th DCA 1981), the court held civil contempt orders are reviewable by interlocutory appeal, relying on this court's 1975 opinion in In re Estate of Rasmussen, 335 So.2d 634 (Fla. 1st DCA 1975), construing rule 4.2 which was amended in 1977. See also Continental Casualty Co. v. Morgan 445 So.2d 678 (Fla. 4th DCA 1984). More recently, in Stewart v. Mussoline 487 So.2d 96 (Fla. 3d DCA 1986), the court has held that a civil contempt order is not reviewable by interlocutory appeal but is subject to review by certiorari under rule 9.030(b)(2)(A), declining to follow Langbert, Morgan, and Rasmussen. We agree with the Third District Court of Appeal, and treat this appeal as a petition for writ of certiorari.