833 So.2d 847 (2002)
Montgomery Blair SIBLEY, Appellant,
v.
Barbara SIBLEY, Appellee.
No. 3D02-3171.
District Court of Appeal of Florida, Third District.
December 23, 2002.
*848 Billbrough & Marks and G. Bart Billbrough, for appellant.
Jay M. Levy; Bette E. Quiat, Miami, for appellee.
Before SCHWARTZ, C.J., and COPE and GODERICH, JJ.
SCHWARTZ, Chief Judge.
The primary point of the appellant, who is incarcerated for indirect contempt because he failed to discharge an obligation for a large amount of admittedly past due child supportof which he has paid not a single centis that the record does not support the express finding below[1] that he has the present ability to pay the purge amount of $100,000.00. We disagree.
We do so because, as the record demonstrates Sibley may command, simply by asking, the payment of the purge amount through his very wealthy father[2] who has in effect given many hundreds of thousands of dollars to Mr. Sibley for any and every purpose except the discharge of this particular obligation. Among these are the payment of $250,000.00 cash for a business which nominally supports him, $200,000.00 in the "forgiveness" of a "loan" from the father, and large sums directly for the support of the appellant's present wife[3] and his other child. We are convinced that they include also very substantial sums in legal fees and costs in order to avoid payment,[4] as well as *849 the maintenance of the present expensive proceeding to secure his release from prison without having to meet his adjudicated duty to support these children, even in the smallest part. His failure to do so stems, as the record again shows, and as the trial judge observed, only from a stubborn, self-immolating hatred of and vendetta against his ex-wife, who also happens to be the mother of their children, and not from any "inability to pay." In these circumstances, which demonstrate the very epitome of a wilful, contemptuous refusal to obey a binding order of court, the rule that all sums from whatever source available to the contemnor-obligor must be considered to determine his "ability to pay" is peculiarly relevant. Koll v. Koll, 812 So.2d 529 (Fla. 4th DCA 2002); Mallardi v. Jenne, 721 So.2d 380 (Fla. 4th DCA 1998); Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997); Rose v. Ford, 831 So.2d 763,(Fla. 4th DCA 2002)(dictum); see also Klein v. Klein, 122 So.2d 205 (Fla. 3d DCA 1960); Silvers v. Silvers, 274 So.2d 555 (Fla. 3d DCA 1973); Silberman v. Silberman, 670 So.2d 1109 (Fla. 3d DCA 1996). Its application compels the rejection of the appellant's argument that, on the merits, he should not be in jail for civil contempt. In our judgment, he is in the right place for the right reason.[5]
Affirmed.
GODERICH, J., concurs.
COPE, J., (dissenting).
The incarceration order was entered on the theory that the former husband, Montgomery Blair Sibley, has sufficient personal property to sell so as to obtain the $100,000 purge amount. As the record does not adequately support that proposition, we should remand to set a proper purge condition.

I.
The parties divorced in 1994. The former husband was the primary residential parent. Both parents lived in the Miami area.
It was agreed by the parties that if the former husband moved away, the three children of the marriage would remain in the Miami area with Barbara Sibley, the former wife. In that event, the former husband was to pay child support of $4,000 per month.[6]
The former husband is a member of The Florida Bar who practiced law in Miami. Subsequent to the divorce, the former husband remarried. In 2000, the former husband moved to Maryland. This triggered the obligation to pay $4,000 per month in child support.
The former husband never paid any of the child support. After protracted enforcement proceedings in the trial court in which the former husband represented himself,[7] the trial court entered a civil contempt order providing for the incarceration of the husband. The purge amount was set at $100,000.
The former husband has appealed. By unpublished order, this court ruled that *850 the former husband could obtain a stay of the order pending appeal by posting a $100,000 bond. The former husband has not posted the bond and is incarcerated.

II.
It seems to me that in footnote two of the majority opinion, the majority concedes the point which requires reversal. Footnote two states that the former husband has "substantial assets, although admittedly not in the purge amount, in his own name." Majority opinion at 848 n. 2 (emphasis added).
The incarceration order in this case was entered precisely on the theory that the former husband does have $100,000 in assets in his personal possession with which to satisfy the purge amount. The majority opinion concedes that the record does not adequately support the trial court's view of the matter.
The former wife testified that the former husband received in the dissolution of marriage various items of silver and artwork. She placed a value of $10,000 on one silver tray, but the record contains no valuation of any of the other items, and there is a dispute about the former husband's continuing ownership of some of the items.
Under Bowen v. Bowen, 471 So.2d 1274 (Fla.1985), the court must determine whether the contemnor possesses the ability to pay the purge amount. Id. at 1279. In making this determination, "the trial court is not limited to the amount of cash immediately available to the contemnor; rather the court may look to all assets from which the amount might be obtained." Id. (emphasis in original).
In the present situation, the trial court has at least two alternatives. One is to obtain reasonable estimates of value of the items which remain in the former husband's possession. Because the property is in Maryland, the distance and expense of appraisal may make this an unattractive alternative.
The speedier alternative would be to modify the purge condition to allow release of the former husband upon turnover of the assets to a proper agent for the wife in Maryland. The wife would then be required to sell those items of personal property in a commercially reasonable manner. This approach would avoid the delay and expense of appraisal.
While the trial court's order does not say in so many words that the $100,000 purge amount was supposed to come from the personal property of the former husband, that is the only reasonable interpretation of the order.[8] Further, in her brief in this court, the former wife has defended the order on the theory that the former husband has sufficient assets to pay the purge amount. The former wife makes reference to the assets of the former husband's fatherHarper Sibley, Jr.only in passing in a footnote. Appellee's brief at 20 n. 12.
We should reverse the incarceration order and remand for the trial court to enter a revised purge condition, which the former husband would have the present ability to satisfy.

*851 III.
The majority opinion takes the position that the former husband should obtain the purge amount from his father, Harper Sibley, Jr. This was not the basis of the trial court's ruling. In ruling as it has, the majority opinion relies on the "tipsy coachman" doctrine, or "right for the wrong reason" rule.
The Florida Supreme Court has said:
[Respondent] attempts to invoke the "tipsy coachman" doctrine, which permits a reviewing court to affirm a decision from a lower tribunal that reaches the right result for the wrong reasons so long as "there is any basis which would support the judgment in the record." Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 644-45 (Fla.1999).
As this Court recently reiterated in Robertson v. State, 829 So.2d 901 (Fla. 2002), the key to applying the tipsy coachman doctrine is that the record before the trial court must support the alternative theory or principle of law. See Robertson v. State, 829 So.2d 901, 907; see also State Dept. of Revenue ex rel. Rochell v. Morris, 736 So.2d 41, 42 (Fla. 1st DCA 1999). On that basis, the doctrine cannot be applied in this case because the record does not provide an adequate basis for us to reach such materiality conclusion as a pure matter of law.
State Farm Fire and Cas. Co. v. Levine, No. SC01-2085, at 4-5, ___ So.2d ___, 2002 WL 31833886 (Fla. Dec. 19, 2002).
In the present case the trial court heard testimony from the former husband's father, Harper Sibley, Jr., in July 2002. The trial court limited the inquiry to two specific issues: the fact that Mr. Sibley had stopped paying the tuition for the grandchildren (the children of this marriage), and what gifts or property he had given to the former husband.
It is telling that the trial court itself restricted the amount of inquiry which could be made of Mr. Sibley, and after hearing the testimony, did not base the purge amount on Mr. Sibley's ability to pay. The trial court fashioned the contempt order and purge amount based on the trial court's conclusions regarding the former husband's ability to pay.
If there is a theory on which Mr. Sibley can be considered a source of funds to satisfy the purge condition, then proper procedure requires that issue to be first addressed in the trial court.
With regard to the merits, there is no question but that over the years, the former husband, the former wife, and the children of the marriage all enjoyed large gifts from Mr. Sibley. As a general proposition, however, this court has rejected the idea that the availability of loans or gifts from wealthy relatives translates into the present ability to pay a purge amount.
The former husband relies on Perez v. Perez, 599 So.2d 682 (Fla. 3d DCA 1992), which said:
The purpose of a civil contempt proceeding is to obtain compliance on the part of a person subject to an order of the court. Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985). Where incarceration is under consideration as a possible remedy for a civil contempt, there must be "a separate, affirmative finding that the contemnor possesses the present ability to comply with the purge conditions set forth in the contempt order." Id. at 1279. While making that determination, the court may look to all of the contemnor's assets from which the amount might be obtained. Id. See Russell v. Russell, 559 So.2d 675 (Fla. 3d DCA 1990).

*852 In the present case, it appears the trial court based its finding of present ability to pay, and the finding of contempt, on the general master's outrageous theory that Perez could obtain a loan from his relatives. The findings of the general master, upon whose report the trial court relied, stated in part:
The General Master finds that the Respondent/Husband has the superior ability to pay the Petitioner/Wife's attorney's fees and costs as the testimony showed that he can readily borrow the funds from relatives.
. . . .
It is clear that under Bowen, the instant inquiry must be directed to the contemnor's own assets, not those of his relatives. Thus, there must be a new hearing. Russell, 559 So.2d at 676. As noted in Russell, the Bowen case envisions a two-stage inquiry in civil contempt proceedings: first, a determination of whether the respondent has willfully violated the court order, id. at 1278-79; second, the decision as to what remedy is appropriate. Id. at 1279.
Perez, 599 So.2d at 683; see also Sol v. Sol, 656 So.2d 206 (Fla. 3d DCA 1995).[9]
Up to a point, the former husband's reliance on Perez is well taken. The mere fact that Mr. Sibley has in the past made large gifts to the former husband and family members is not (without more) sufficient to allow consideration of Mr. Sibley's assets in setting a purge amount for the former husband. In this case, however, there are other circumstances to be considered.
We are dealing with child support in this case. The court's orders must be respected, and the court cannot allow child support orders to be interfered with.
In the present case Mr. Sibley and the former husband are in business together. Mr. Sibley purchased a business for $250,000 which is operated by the former husband. The business manufactures custom carrying cases for computers and other sensitive equipment. There are three employees besides the former husband.
The former husband's net salary is $2,500 per month. The business pays another $2,500 per month for the rental of a house owned by Mr. Sibley, in which the former husband resides. The record reasonably supports the conclusion that the business also pays a great deal of the former husband's personal expenses.
The business currently operates at a loss. When additional working capital is needed, Mr. Sibley provides it. Of course, $2,500 per month routinely goes back to Mr. Sibley in the form of rent, so part of the working capital merely travels in a circle.
Although the point has not been raised below or argued here, it seems to me that we should treat as a civil wrong, or contempt, the structuring of employment arrangements so as to conceal income which would otherwise be available to satisfy an outstanding child support award. Where a third party participates in a scheme to conceal such income, then that should be a basis for imposition of liability on the third person, as well as the obligor. And the interweaving of the business affairs of the obligor and the third person distinguish such a case from Perez.
While the circumstances suggest that such collusion occurred in this case, that *853 issue has not been asserted or tried in the trial court. We should allow the issue to be explored on remand.[10]

IV.
The present record certainly supports the proposition that the former husband is intentionally underemployed and has divested himself of assets which could have been used to pay his child support obligation. For such conduct the remedy is indirect criminal contempt, not civil contempt. As we have stated:
An intentional divestiture of assets with intent to avoid the payment obligation can be a ground for civil contempt.... Where there has been a divestiture of assets incarceration cannot be selected as the remedy because the contemnor does not have the present ability to purge himself. If the court concludes that the respondent has willfully divested himself of the ability to pay, then that conduct may be punished by incarceration or otherwise in a criminal contempt proceeding with the attendant due process safeguards.
Russell v. Russell, 559 So.2d at 677.

V.
In sum, the present record and established precedent do not support the proposition that the former husband has the present ability to pay the $100,000 purge amount. The order now before us should be reversed and the cause remanded to set an appropriate purge amount or purge condition.
NOTES
[1] The presence of such a finding is indispensable to the validity of the order. See Bowen v. Bowen, 471 So.2d 1274 (Fla.1985).
[2] Notwithstanding that the appellant has adamantly refused to reveal many of his financial recordswhich in itself raises a strong presumption against him, City of Miami v. Rantanen, 645 So.2d 4 (Fla. 1st DCA 1994)the record shows substantial assets, although admittedly not in the purge amount, in his own name.
[3] The senior Sibley purchased a three-bedroom, three-story town home in Maryland in which the son, his new wife, and child lived and where he now lives alone. Although there is no record either that such a payment was ever made or what the source of such a payment may have been, see supra note 2, the rent supposedly due the father is $2500.00 per month.
[4] The following is only a partial recounting of the litigation he has unsuccessfully generated to achieve that end:

Sibley v. Sibley, 823 So.2d 785 (Fla. 3d DCA 2002)(table); Sibley v. Sibley, 816 So.2d 136 (Fla. 3d DCA 2002); Sibley v. Sibley, 815 So.2d 673 (Fla. 3d DCA 2002), review denied, No. SC02-1309, 833 So.2d 774 (Fla. Nov.22, 2002)(table); Sibley v. Sibley, 814 So.2d 1054 (Fla. 3d DCA 2002)(table); Sibley v. Sibley, 793 So.2d 959 (Fla. 3d DCA 2001)(table); Sibley v. Sibley, 803 So.2d 738 (Fla. 3d DCA 2001)(table); Sibley v. Sibley, 795 So.2d 71 (Fla. 3d DCA 2001)(table); Sibley v. Sibley, 791 So.2d 481 (Fla. 3d DCA 2001)(table); Sibley v. Sibley, 771 So.2d 1175 (Fla. 3d DCA 2000)(table); Sibley v. Sibley, 751 So.2d 586 (Fla. 3d DCA 2000)(table); Sibley v. Sibley, 733 So.2d 529 (Fla. 3d DCA 1999)(table); Sibley v. Sibley, 732 So.2d 1079 (Fla. 3d DCA 1999)(table); Sibley v. Sibley, 725 So.2d 1273 (Fla. 3d DCA 1999); Sibley v. Sibley, 710 So.2d 1017 (Fla. 3d DCA 1998); Sibley v. Sibley, 34 Fed.Appx. 969 (11th Cir.2002)(table).
[5] In the light of this conclusion, we consider that the appellant's other point, which claims defects in the orders below, see Fla.Fam. L.R.P. 12.615 (2002), does not present harmful error.

Gonzalez v. Gonzalez, 834 So.2d 291 (Fla. 3d DCA 2002); Broadfoot v. Broadfoot, 791 So.2d 584 (Fla. 3d DCA 2001).
[6] There was also an agreement regarding the payment of tuition for the children at private schools and college. Those issues are not involved in the present appeal.
[7] It appears the first time the former husband hired counsel was for this appeal.
[8] Under Family Law Rule 12.615(e), the incarceration order should specify the intended source of the purge amount:

(e) Purge. If the court orders incarceration, a coercive fine, or any other coercive sanction for failure to comply with a prior support order, the court shall set conditions for purge of the contempt, based on the contemnor's present ability to comply. The court shall include in its order a separate affirmative finding that the contemnor has the present ability to comply with the purge and the factual basis for that finding.
(Emphasis added).
[9] Perhaps in this case or an appropriate case we should revisit Perez. By statute, Texas requires an obligor in a child support case to attempt to borrow the funds to pay the child support, or arrearage, from any appropriate available source, including relatives. See Tex. Fam.Code Ann. § 157.008(c)(3), (4) (Vernon 2002); Ex parte Bregenzer, 802 S.W.2d 884 (Tex.App.1991). The Texas approach appears reasonable.
[10] Where, as here, a business pays the former husband not only a salary, but his living expenses, it would appear to me that an income deduction order can be imposed, either on the husband's stated salary or on the gross income of the business. While that may be a tool to resolve the payment of child support on an ongoing basis, there is no showing anywhere that the business has the assets or income to supply the $100,000 purge amount.