911 So.2d 130 (2005)
Jose MENDANA, Appellant,
v.
Ana M. MENDANA, Appellee.
No. 3D05-81.
District Court of Appeal of Florida, Third District.
May 4, 2005.
Rehearing and Rehearing Denied October 5, 2005.
*131 William T. Brady, Jr.; and Jay M. Levy, Miami, for appellant.
Preira, Jonasz & Keys and Jonathan Jonasz, Miami Beach, for appellee.
Before CORTIÑAS and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
Rehearing and Rehearing En Banc Denied October 5, 2005.
ROTHENBERG, Judge.
The former husband, Jose Mendana, appeals from an order finding him in indirect criminal and indirect civil contempt. We affirm, but reverse the sentence imposed for indirect criminal contempt.
In September 2003, the trial court entered a final order of dissolution of marriage, ordering the former husband to pay *132 child support for the parties' three minor children. At the time that the final order was entered, the former husband was employed by Jackson Memorial Hospital ("JMH") as an emergency medical technician. The trial court also ordered the former husband to pay the former wife's attorney's fees and costs totaling approximately $17,500.00 because the former husband had "demonstrated unreasonable behavior based upon his conduct and legal positions taken during trial which has resulted in the expenditure of unnecessary attorney's fees by the Wife."
In January 2004, the trial court entered an amended income deduction order and an order requiring JMH to deduct from the former husband's paycheck $441.04 biweekly for child support and $169.87 biweekly for an existing child support arrearage and interest on that arrearage.
In April 2004, the former husband petitioned for a downward modification of child support, indicating that he was no longer employed by JMH, that he was employed as a short-order cook, and that his monthly income had decreased from $2,646.40 to $800.00. In his petition, he claimed that he had changed jobs "due to ageand stress related diseases." In July 2004, the former husband filed a financial affidavit which indicated that he was no longer employed as a short-order cook, but was employed by All Medical Personnel earning $11.00 per hour, and that his average monthly income was $1,502.00.
In May 2004, the former wife filed a "Motion for Indirect Civil Contempt For Former Husband's Failure To Pay Child Support Pursuant to Final Order of Dissolution of Marriage." In August 2004, the former wife filed: 1) a "Motion for Order to Show Cause for Indirect Criminal Contempt" which attached a sworn affidavit alleging that the former husband had voluntarily quit his job at JMH in order to avoid the amended income deduction order; 2) a "Motion for Indirect Criminal Contempt for Former Husband's Failure to Pay Child Support Pursuant to Final Order of Dissolution of Marriage;" 3) a "Motion for Indirect Civil and Indirect Criminal Contempt for Former Husband's Failure to Comply With Final Order on Attorney Fees and Costs;" and 4) a sworn affidavit alleging that the former husband had voluntarily quit his job to avoid the amended income deduction order. The former wife's motions and sworn affidavit were delivered to the former husband's attorney.
Both the former husband and his attorney attended the hearing on the former wife's Motion for Order to Show Cause for Indirect Criminal Contempt. The former wife's sworn affidavit, alleging that the former husband had voluntarily quit his job at JMH, was attached to her motion. Following the hearing, on September 13, 2004, the trial court entered an order to show cause stating, "The Former Husband is hereby placed on notice pursuant to Fla.R.Crim.P. 3.840 and the Due Process Clause of the 14th Amendment nunc pro tunc to August 2, 2004, that he must answer to the Former Wife's allegation that he is in Indirect Criminal Contempt." The former husband filed a response to the former wife's motions for indirect criminal and indirect civil contempt addressing the former wife's assertion in her sworn affidavit that he had voluntarily quit his job at JMH in order to avoid the amended income deduction order.
A hearing was held on the former husband's petition for modification of child support and the former wife's motions for indirect civil and criminal contempt. During the hearing, two documents written by the former husband were introduced into evidence. The first document was a JMH document which stated in part, "The sanctions *133 imposed by the court after my last hearing have left me with mere pennies... and the reasons described in the aforementioned paragraphs have forced me to seek a different employment, perhaps one that will allow me to maintain a healthy standard of living and a more stable state of mind." The second document was a Mount Sinai employment document in which the former husband stated that he had left JMH because of the amount of money being deducted from his paycheck as a result of a court judgment. Further, this Mount Sinai document did not mention job related stress or health reasons.
The former husband testified at the hearing that he resigned from JMH because he was suffering from dizziness, blurry vision, and coldness of the hands and feet. He further explained that he was currently employed by All Medical Personnel earning $400.00 gross per week, but that he was attempting to find a permanent position as an emergency medical technician. He also testified that he was living with his fiancée; that he was assisting her with the payment of certain household expenses; and that she had loaned him approximately $17,000.00 to pay his attorney's fees.
The trial court entered an order finding the former husband in indirect criminal contempt because "he willingly and voluntarily divested himself of the ability to comply" with the trial court's order by quitting his job at JMH. The trial court also found that the former husband failed to show that he had any medical problem that would have prevented him from continuing to work at JMH, and that he "was in fact more concerned with his financial situation and with figuring out a way to avoid his child support obligation, which he called a `sanction.'" The trial court ordered that the former husband be incarcerated for six months with work release.
The trial court, citing to Sibley v. Sibley, 833 So.2d 847 (Fla. 3d DCA 2002), review denied, 854 So.2d 660 (Fla.2003), cert. denied, 540 U.S. 1109, 124 S.Ct. 1074, 157 L.Ed.2d 895 (2004), also held the former husband in indirect civil contempt finding, "from the Former Husband's own testimony about his financial relationship with [his fiancée,] ... he has the ability to access money from her," and therefore, he has the present ability to pay a reasonable purge amount. The purge amount is approximately $14,700.00. The former husband's appeal follows.
The former husband contends that the trial court erred by relying on Sibley, and in finding him in indirect civil contempt. We disagree.
In Sibley, the father was incarcerated for indirect contempt because he failed to pay his past due child support. The trial court found that he had the present ability to pay the purge amount of $100,000.00. This court affirmed after concluding that the record demonstrated that the father had the present ability to pay the purge amount because he
may command, simply by asking, the payment of the purge amount through his very wealthy fatherwho has in effect given many hundreds of thousands of dollars to Mr. Sibley for any and every purpose except the discharge of this particular obligation. Among these are the payment of $250,000.00 cash for a business which nominally supports him, $200,000.00 in the "forgiveness" of a "loan" from the father, and the large sums directly for the support of the appellant's present wife and his other child.
Sibley, 833 So.2d at 847 (footnote omitted).
In the present case, the evidence demonstrates that the former husband is presently living with his fiancée in her *134 Aventura condominium, and that he only minimally assists her with the expenses such as the electricity, car insurance, phone, and a portion of the mortgage. In addition, the fiancée loaned the former husband approximately $17,000.00 to pay his attorney's fees, an amount far in excess of the money the former husband owed in past child support. We, therefore, conclude that there was sufficient evidence to support the trial court's finding that the former husband had the present ability to pay the purge amount. Consequently, we affirm the portion of the order finding the former husband in indirect civil contempt.
The former husband also argues that the order adjudicating him in indirect criminal contempt must be reversed because the trial court did not strictly follow several procedures set forth in Florida Rule of Criminal Procedure 3.840. He claims that the order finding him in indirect criminal contempt must be reversed as the order to show cause did not state "the essential facts constituting the criminal contempt charged." We disagree.
Rule 3.840(a) requires that the order to show cause state "the essential facts constituting the criminal contempt charged." An order to show cause sufficiently states the essential facts constituting the criminal contempt where a sworn affidavit, which sets forth the essential facts, is attached to the order to show cause. In such situations, the order to show cause sufficiently "apprise[s] the defendant of the specific acts for which he or she could be punished." State v. Wood, 700 So.2d 401, 403 (Fla. 1st DCA 1997)(citing Brown v. State, 595 So.2d 259 (Fla. 2d DCA 1992)). The former husband argues that Wood and cases with similar holdings are inapplicable because the former wife's sworn affidavit was not attached to the order to show cause. Although these cases are factually different, we do not find that they are inapplicable. The gist of these cases is that the order to show cause must sufficiently place the defendant on notice of the "specific acts for which he or she could be punished" so that the defendant is accorded a reasonable opportunity to prepare a defense.
In the instant case, the order to show cause stated that the former husband "must answer to the Former Wife's allegation that he is in Indirect Criminal Contempt." This order was issued after a hearing on the former wife's "Motion for Order to Show Cause For Indirect Criminal Contempt" which attached the former wife's sworn affidavit in which she alleged that the former husband had quit his job at JMH in order to avoid the amended income deduction order. The record clearly reflects that the "allegations" referred to in the order to show cause were those asserted in the former wife's motion for order to show cause and her sworn affidavit, which both the former husband and his attorney were made aware of. Further, the former husband filed a response to the former wife's motion for indirect criminal contempt in which he specifically argued that he resigned from JMH for health related reasons; that he has since earned significantly less wages; that he has been attempting to secure employment at a medical facility which pays a salary similar to what he was earning at JMH; that his job at JMH was very stressful due, in part, to the extreme volume of patients; that after his child support payment and arrearage were deducted from his biweekly paychecks, his biweekly paychecks were significantly reduced, which "compounded the job-related stress;" that he "did not voluntarily quit his job in order to avoid paying child support;" and that "[a]ny non-compliance with the Final Order of Dissolution of Marriage and the Amended Income *135 Deduction Order is not intentional nor contemptuous." As evidenced by the former husband's written response, he was on notice of the "specific acts for which he... could be punished." Wood. As such, we find that the trial court's failure to either state the "essential facts" in the order to show cause or to attach the former wife's sworn affidavit to the order to show cause, was not fatal.
The defendant further argues that reversal is mandated because he was not arraigned as required by Rule 3.840(d). We disagree.
Rule 3.840(d) provides in part: "The defendant may be arraigned at the time of the hearing, or prior thereto at the defendant's request. A hearing to determine the guilt or innocence of the defendant shall follow a plea of not guilty." Under the facts of this case, although the trial court failed to ask him for his plea prior to the commencement of the hearing, the former husband's written response clearly indicated that he had pled not guilty and, during the hearing itself, the defendant continued to assert that he did not voluntarily quit his job at JMH in order to avoid the amended income deduction order. As such, the trial court's failure to ask him to enter a plea was not fatal.
While we conclude that the trial court correctly adjudicated the former husband in indirect criminal contempt, we agree with the former husband that pursuant to Rule 3.840(g), prior to the pronouncement of sentence, the trial court was required to allow him the opportunity to present evidence in mitigation of his behavior. We, therefore, reverse the sentence imposed and remand for resentencing after the former husband has been given the opportunity to present evidence of mitigating circumstances. See Moore v. State, 245 So.2d 880 (Fla. 2d DCA 1971).
In conclusion, we affirm the portion of the trial court's order finding the former husband in indirect civil contempt and adjudicating the former husband guilty of indirect criminal contempt, but reverse for resentencing consistent with this opinion.