34 So.3d 131 (2010)
Elan ABUROS a/k/a Ran Aburos, Appellant,
v.
Yael ABUROS, Appellee.
No. 3D08-2808.
District Court of Appeal of Florida, Third District.
April 21, 2010.
*132 John G. Crabtree and George R. Baise Jr., Key Biscayne; and Marcia Soto, Coral Gables, for appellant.
Sheldon Zipkin, North Miami Beach, for appellee.
Before COPE, ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
ROTHENBERG, J.
Elan Aburos ("the former husband") appeals the civil contempt and incarceration order entered against him for failure to pay Yael Aburos ("the former wife") the alimony and child support payments required under the 2001 order dissolving their marriage. Because we conclude there is no competent substantial evidence to support the trial court's finding that the former husband has the present ability to pay the $25,000 purge condition, we reverse the contempt order under review.

Background
A final judgment dissolved the Aburos' nine-year marriage on July 11, 2001, and required, in part, that the former husband pay $1,700 monthly in permanent periodic alimony, $1,693 monthly in child support, and the $70,000 second mortgage on the marital home, which was awarded to the former wife.
In April 2001, the former husband was held in contempt of court for failing to make the required payments, failing to attend a hearing, willfully fleeing the court's jurisdiction by moving to Israel, and dissipating marital assets. The trial court found that "the Husband's abandonment of his children was made in an effort to flee the jurisdiction of this court with practically all of the marital assets, except for the marital home, which Husband could not remove"; the former husband "grossly understated his actual income and *133 made efforts to intentionally reduce his present income due to this pending dissolution action"; and his business brought in "a significant amount of unreported cash income." Consequently, the trial court ordered the former husband to recover funds from an account he improperly transferred to his sister, Meera Burman, and to give them to his former wife.
After an arrest in 2002, the former husband purged his contempt and began paying $800 monthly towards his child support and alimony obligations. He contends that his former wife accepted the reduced monthly payments without protest for more than six years because she knew he could not afford to pay more. The former wife, however, contends that she wrote a letter to the trial court in 2005 in an effort to obtain a hearing to collect the alimony and child support owed.
In November 2007, the former wife filed a motion seeking a contempt order against the former husband for failing to make the required payments. A magistrate held three hearings at which the former husband testified that he had $52 in his bank account and a car worth $1,350. He stated that he was making $2,160 a month as a salesman at a jewelry store owned by his sister, Bakel Einhorn, and living in her small, furnished apartment because he could not afford his own place after regularly making the $800 monthly support payments. He also testified that he had access to the store's bank account, which contained approximately $25,000 in June 2008, and a bank-issued signature stamp to issue checks in his sister's name to pay the usual day-to-day operating expenses of the business. He testified that any out-of-the-ordinary business expense required the approval of his sister, an Orlando resident who rarely visits the store; he was not authorized to issue checks or withdraw funds from the business account for his own personal expenses; and he possessed no ownership interest in the business.
The former wife testified that the former husband is a talented jewelry designer who previously made $100,000 annually and who has the ability to earn more than his present income. She claimed she called her former husband many times asking him to help with expenses but had no success.
The magistrate found that the former husband "has complete dominion over the operation of the store including access to its bank account," he has the present ability to pay a purge amount, and he owed the former wife $319,828. In November 2008, the trial court denied the former husband's exceptions to the magistrate's findings, issued a civil contempt order containing a purge provision in the amount of $25,000, and ordered that the former husband be taken into custody.[1] The former husband filed an emergency motion to stay the order incarcerating him, which was granted by this Court, pending resolution of this appeal.

Analysis
In Bowen v. Bowen, 471 So.2d 1274, 1278-79 (Fla.1985), the Florida Supreme Court identified a two-step procedure for establishing civil contempt in family support matters. First, the court must determine whether the defaulting party has willfully violated the court order; and second, the court must determine an appropriate remedy. If incarceration is ordered, the court must make a separate, *134 affirmative finding that the defaulting party has the present ability to pay the purge condition. The former husband challenges the trial court's finding on this second question because there was no evidence to support the finding that he had the present ability to pay the $25,000 purge amount. We agree.
The finding that the former husband had the ability to pay the purge amount was based on the former husband's access to his sister's business account, the assistance previously provided by his sisters, and his sisters' ability to pay the purge amount. The finding that the former husband had the ability to pay the purge amount due to his access to his sister's business account was error. We also find that the facts contained in this record do not support reliance on the financial resources or good graces of the former husband's family for satisfaction of the former husband's debts.
The evidence introduced below is that the business was purchased by the former husband's sister and that the former husband is working at the business as an employee under a written employment agreement. He is not a signatory on the lease nor on any of the business accounts, and he possesses no ownership interest in the business. He was, however, provided with a signature stamp to operate the business on a day-to-day basis. There have been instances where the business was allegedly unable to pay him his entire salary. Other than his salary (approximately $25,000 a year), he receives no other money from the business. The former husband's sister, the owner of the business, objected to her brother's use of the business' assets to pay off her brother's debts, and prior to the trial court's hearing on the former husband's exceptions, allegedly revoked the former husband's "stamp" privileges. Because there was no evidence offered to dispute this testimony, there is no evidence to support a finding that the former husband could pay the purge amount by legally accessing the business account in question.
Next, we turn to the finding that the former husband's family holds the "key" to the former husband's freedom. We recognize that under certain limited circumstances, this Court has relied on the assets of close friends and family members in determining whether a contemnor has the present ability to pay a purge amount.
In Sibley v. Sibley, 833 So.2d 847 (Fla. 3d DCA 2002), the former husband failed to pay any of the $4,000 monthly child support payments he owed to his former wife, and he was incarcerated for civil contempt after the trial court determined he had the present ability to pay a purge amount of $100,000. This Court affirmed the contempt order, finding that the record demonstrated that Sibley could "command, simply by asking, the payment of the purge amount through his very wealthy fatherwho has in effect given many hundreds of thousands of dollars to Mr. Sibley for any and every purpose except the discharge of this particular obligation." 833 So.2d at 848. Payments from Sibley's father included $250,000 for a business, $200,000 to forgive a loan from the father, large sums to support Sibley's present wife and his other child, and legal fees covering no less than sixteen lawsuits he filed in state and federal courts attempting to avoid his obligations. We additionally noted that Sibley had "adamantly refused to reveal many of his financial records," which raised a strong presumption against his argument that he was unable to pay the purge amount, and that the record demonstrated that he had substantial assets in his name. Thus, this Court found that Sibley's failure to pay was not due to any inability to pay the purge amount but *135 instead was "the very epitome of a willful, contemptuous refusal to obey a binding order of court."
Similarly, in Mendana v. Mendana, 911 So.2d 130 (Fla. 3d DCA 2005), this Court affirmed an order of contempt containing a purge amount of $14,700 based upon the former husband's actions and his ability to readily obtain the purge amount. The record reflected that Mendana had recently voluntarily resigned from his employment because he objected to the amount of money being deducted from his paycheck to satisfy the court judgment entered by the trial court in favor of his former wife. At the time, Mendana was living with his fiancée and helping her pay their expenses, including utilities, car insurance and the mortgage. The record also reflected that Mendana's fiancée loaned him $17,000 to pay his attorney's fees, an amount greater than the $14,700 purge condition.
In both Sibley and Mendana, the father and the fiancée, respectively, were paying sums of money that would be considered large in relation to the purge amounts contained in the contempt orders. In Sibley, the father not only was employing Sibley but also paying a significant portion of his personal expenses. In both cases, the personal expenses paid by the father and the fiancée could have helped to pay the child support arrearages the former husbands owed, and the former husbands appeared to have ready access to those funds. These two cases thus present unique circumstances where a third party's assets may be considered when assessing the debt of another, and represent the exception, not the norm.
In contrast, the record in the instant case does not provide the same support for determining the former husband's ability to pay the support arrearages or the purge amount specified in the contempt order based on either the assets contained in his sister's business bank account or his ability to obtain them directly from his sister. The record is devoid of any evidence that the sister's business is covering the former husband's personal expenses; the sister is willing to pay his debts, particularly a debt that is roughly equal to his annual salary; or that the former husband has any ownership interest in the business.
Unlike Sibley or Mendana, there was also no evidence in the instant case that the former husband was perpetrating a fraud on the court or that he had sufficient assets to pay the purge amount. In Sibley, the former husband refused to reveal his financial records and the record showed he had substantial assets in his own name. In Mendana, the former husband admitted in an employment discharge document that he was quitting his job to avoid his support obligations. Although the former husband in the instant case flouted court orders and his support obligations from 2001 to 2002, there is no evidence that he has done so since 2002.
In the present action, the magistrate found the former husband's testimony not credible, but that does not excuse the requirement to identify an appropriate source of funds from which he could pay the purge amount. See Sears v. Sears, 617 So.2d 807 (Fla. 1st DCA 1993) (quashing a civil contempt order because the trial court failed to let the former husband testify and to allow his attorney to present argument on the present ability to pay a purge).
As the Florida Supreme Court observed in Bowen, the purpose of civil contempt proceedings is to obtain compliance by the contemnor, thus "it must be used only when the contemnor has the ability to comply." 471 So.2d at 1277. Indirect criminal contempt proceedings, however, may be used to punish an individual *136 for an intentional violation of a court order and to vindicate the court's authority. Id.
When the court believes that the defaulting party's conduct is such that it warrants punishment, a criminal contempt proceeding should be instituted. Criminal contempt proceedings are appropriate when it can be established that the party in default has continually and willfully neglected his support obligations, or has affirmatively acted to divest himself of assets and property.
Id. at 1279.
Because the record does not establish that the former husband has the present ability to pay the purge amount, the order under review must be reversed.
Reversed and remanded.
COPE, J., concurs.
SCHWARTZ, Senior Judge (dissenting).
I would affirm the order under review. In my view, this case is governed by Sibley v. Sibley, 833 So.2d 847, 848 (Fla. 3d DCA 2002), which holds that
[i]n these circumstances, which demonstrate the very epitome of a willful, contemptuous refusal to obey a binding order of court, the rule that all sums from whatever source available to the contemnor-obligator must be considered to determine "his ability to pay" is peculiarly relevant.
Here, as in Sibley, 833 So.2d at 848, the husband may "command, simply by asking, the payment of the purge amount though his very wealthy [sisters]." The record is replete with evidence that the husband's sisters have supported their brother financially, including his testimony that one of his sisters has provided him with a rentfree apartment for the past five years[2] and paid for his present and former legal counsel to represent him in court proceedings.[3] In fact, this case is stronger than Sibley because, Aburos did not have to secure his sister's action or even consent to write a check for the purge amount. While there is argument of counsel, there is no evidence that the sister objected to her brother's use of the business assets or that she revoked her brother's "stamp" privileges.[4] See op. at 134. Rosa-Hernandez v. Hernandez, 979 So.2d 1194, 1196 (Fla. 4th DCA 2008) (stating that "facts are not established for consideration by the trial court or by appellate review when attorneys make representations in their arguments before the trial court") (quoting State v. Bauman, 425 So.2d 32, 34-35 n. 4 (Fla. 4th DCA 1982)); Daughtrey v. Daughtrey, 944 So.2d 1145, 1148 (Fla. 2d DCA 2006). It was obviously for the trier of fact alone to accept or, as she did, to reject as unbelievable the husband's testimony as to his business "arrangement" with his sister. See Perez v. Marti, 770 So.2d 176, 179 (Fla. 3d DCA 2000) (Schwartz, C.J., dissenting) (noting the "masses of our cases which hold respectively that credibility is for the trier of fact and that trial court judgments are presumed correct and should be interpreted to uphold them, rather than by attempting *137 to discover and impute error"). In the amended final judgment of dissolution of marriage, the trial court found that
the Husband's actions in dismantling the business and secreting the assets were made for the willful purpose of avoiding his obligation of support to his Wife and children, and that since the Husband maintains possession of all the inventory and assets of the business, that he could if he so desired, re-establish and reopen a jewelry business to enable him to earn the same amounts that he was earning in the year 2000.
The reversal of the contempt order rewards the husband, who is also a jewelry designer whose jewelry sells for $5000 to $10,000, for successfully doing what the trial court found that he had donedismantle a financially lucrative business and secrete its assetsand what the trial court suspected he would do in order to avoid paying his obligationsreestablish and reopen a jewelry business in the same commercial area as his previous store.[5]
As in Sibley and Mendana v. Mendana, 911 So.2d 130 (Fla. 3d DCA 2005), I believe that the trial court correctly approved the magistrate's finding that the husband has the present ability to pay the purge amount.[6]
NOTES
[1] The record reflects that prior to the issuance of the contempt order, the former husband submitted a payment of $1,402, which allegedly represents the $52 the former husband had remaining in his bank account and $1,350 he borrowed against the value of his car.
[2] The husband testified that the apartment rent was approximately $1150 a month.
[3] At the hearing on the husband's exceptions, in reviewing the general magistrate's findings, the trial court found nothing wrong with the magistrate's findings that the sisters paid "for just about everything according to his testimony, also for the attorneys that he has in this case." T. 7 (Nov. 5, 2008 hearing); T. 9 (noting the magistrate's ruling the court stated: "Based upon everything, that his sisters paid for everything for him, his apartment, his attorneys, his everything, that he has the ability to make this payment.").
[4] The sister did not testify at the hearings.
[5] When asked why he stopped working for a sister at her seafood business, he stated that "I didn't like it very much plus my other sister saw the opportunity for me and for her to start a new business." T. 46 (June 24, 2008 hearing) (emphasis added).
[6] The record does not support the majority's statement that there is no evidence that the husband has "flouted court orders and his support obligations" since 2002. Op. at 135. The record is decidedly to the contrary. As found by the general magistrate (and not objected to by the husband), [e]xcept for the payment of $800 per month in child support,... [t]the former husband has never paid any alimony to the Former Wife, never paid any of the equitable distribution funds, never paid the second mortgage, never paid the child support arrearage and never paid the full amount of the ongoing child support since his return to the United States."