SCHWARTZ, Senior Judge
(dissenting).
I would affirm the order under review. In my view, this case is governed by Sibley v. Sibley, 833 So.2d 847, 848 (Fla. 3d DCA 2002), which holds that
[i]n these circumstances, which demonstrate the very epitome of a willful, contemptuous refusal to obey a binding order of court, the rule that all sums from whatever source available to the contem-nor-obligator must be considered to determine “his ability to pay” is peculiarly relevant.
Here, as in Sibley, 833 So.2d at 848, the husband may “command, simply by asking, the payment of the purge amount though his very wealthy [sisters].” The record is replete with evidence that the husband’s sisters have supported their brother financially, including his testimony that one of his sisters has provided him with a rent-free apartment for the past five years[2] and paid for his present and former legal counsel to represent him in court proceedings.[3] In fact, this case is stronger than Sibley because, Aburos did not have to secure his sister’s action or even consent to write a check for the purge amount. While there is argument of counsel, there is no evidence that the sister objected to her brother’s use of the business assets or that she revoked her brother’s “stamp” privileges.[4] See op. at 134. Rosa-Hernandez v. Hernandez, 979 So.2d 1194, 1196 (Fla. 4th DCA 2008) (stating that “facts are not established for consideration by the trial court or by appellate review when attorneys make representations in their arguments before the trial court”) (quoting State v. Bauman, 425 So.2d 32, 34-35 n. 4 (Fla. 4th DCA 1982)); Daughtrey v. Daughtrey, 944 So.2d 1145, 1148 (Fla. 2d DCA 2006). It was obviously for the trier of fact alone to accept or, as she did, to reject as unbelievable the husband’s testimony as to his business “arrangement” with his sister. See Perez v. Marti, 770 So.2d 176, 179 (Fla. 3d DCA 2000) (Schwartz, C.J., dissenting) (noting the “masses of our cases which hold respectively that credibility is for the trier of fact and that trial court judgments are presumed correct and should be interpreted to uphold them, rather than by attempting *137 to discover and impute error”). In the amended final judgment of dissolution of marriage, the trial court found that
the Husband’s actions in dismantling the business and secreting the assets were made for the willful purpose of avoiding his obligation of support to his Wife and children, and that since the Husband maintains possession of all the inventory and assets of the business, that he could-if he so desired, re-establish and reopen a jewelry business to enable him to earn the same amounts that he was earning in the year 2000.
The reversal of the contempt order rewards the husband, who is also a jewelry designer whose jewelry sells for $5000 to $10,000, for successfully doing what the trial court found that he had done — dismantle a financially lucrative business and secrete its assets — and what the trial court suspected he would do in order to avoid paying his obligations — reestablish and reopen a jewelry business in the same commercial area as his previous store.[5]
As in Sibley and Mendana v. Mendana, 911 So.2d 130 (Fla. 3d DCA 2005), I believe that the trial court correctly approved the magistrate’s finding that the husband has the present ability to pay the purge amount.[6]

. The husband testified that the apartment rent was approximately $1150 a month.

. At the hearing on the husband's exceptions, in reviewing the general magistrate’s findings, the trial court found nothing wrong with the magistrate’s findings that the sisters paid “for just about everything according to his testimony, also for the attorneys that he has in this case.’’ T. 7 (Nov. 5, 2008 hearing); T. 9 (noting the magistrate’s ruling the court staled: "Based upon everything, that his sisters paid for everything for him, his apartment, his attorneys, his everything, that he has the ability to make this payment.”).

.The sister did not testify at the hearings.

. When asked why he stopped working for a sister at her seafood business, he stated that "I didn’t like it very much plus my other sister saw the opportunity for me and for her to start a new business." T. 46 (June 24, 2008 hearing) (emphasis added).

. The record does not support the majority's statement that there is no evidence that the husband has "flouted court orders and his support obligations” since 2002. Op. at 135. The record is decidedly to the contrary. As found by the general magistrate (and not objected to by the husband), [ejxcept for the payment of $800 per month in child support, ... [t]the former husband has never paid any alimony to the Former Wife, never paid any of the equitable distribution funds, never paid the second mortgage, never paid the child support arrearage and never paid the full amount of the ongoing child support since his return to the United States.”