PER CURIAM.
Petitioner Walter J. Elliott IV, the former husband (hereinafter “husband”) in a dissolution of marriage action, seeks to quash a commitment order entered following a finding of civil contempt.[1] Because the trial court’s conclusion that husband has the present ability to pay is speculative, and is not supported by competent substantial evidence, we grant the petition. The trial court may hold further proceedings regarding husband’s present ability to pay or initiate criminal contempt proceedings if appropriate.

Background

The parties divorced in October 2007. The final judgment required that husband pay former wife (hereinafter “wife”) $3000 per month in alimony through October 2010. In April 2010, the wife moved to have the husband held in contempt for failure to pay. The court referred the matter to a general master, and on June 29, 2010, a magistrate held a hearing and entered a report. The magistrate made factual findings and recommended that husband be found in civil contempt for willfully violating the court’s order and that he be ordered to pay a purge of $37,999,50 within sixty days.
In July 2010, the .trial court accepted the magistrate’s factual findings and recommendation. Husband did not pay the purge by the deadline, so the wife moved to have him committed. The court again referred the matter to a magistrate who held a commitment hearing and found that husband had not made the slightest effort *1184 to comply and that the husband has sufficient equity in his home to pay the purge. In November 2010, the court approved the finding and ordered husband taken into custody.
Husband challenged the commitment order, and the trial court held hearings regarding husband’s ability to pay. In the interim, husband paid $500 towards the purge. On February 28, 2011, the court again found that husband had the present ability to pay based on his equity in his Palm Beach home which had been listed for sale at $2.25 million. Husband indicated that the price had been reduced but did not indicate the new price.
The court ordered the Sheriff to take husband into custody until he pays the purge. The court recommended work release which would permit the husband to be free to work during the day but would require him to return to jail after work.
On March 14, 2011, the husband was arrested and remains in the Sheriffs custody. In this proceeding, husband argues that the trial court’s order is insufficient and that he lacks the present ability to pay. He asks to be immediately released.

Analysis

The purpose of civil contempt is to compel a party to comply with a court order or to compensate a movant for losses sustained as a result of the contemnor’s conduct. Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985); Fla. Fam. L.R.P. 12.615 (“Civil Contempt in Support Matters”). Civil contempt is not intended to punish, and the contemnor must have the present ability to comply with the order, the so-called “key to his [or her] cell.” Bowen, 471 So.2d at 1277.
Criminal contempt, on the other hand, is used to vindicate the authority of the court and punish an intentional violation of a court order. Id. Criminal contempt proceedings are governed by different procedures. See Fla. R.Crim. P. 3.830 (“Direct Criminal Contempt”); Fla. R.Crim. P. 3.840 (“Indirect Criminal Contempt”). A trial court may summarily punish direct criminal contempt that occurs in the trial court’s presence. An indirect criminal contempt proceeding requires that the court issue an order to show cause. Fla. R.Crim. P. 3.840(a). The defendant in an indirect criminal contempt proceeding is entitled to the constitutional protections afforded to criminal defendants. Bowen, 471 So.2d at 1277.
 In family law civil contempt proceedings, where a party has refused to pay court-ordered support, the court must set a purge amount, and the contemnor must have the present ability to pay that amount to purge the contempt. Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997). Before ordering a party jailed to compel him or her to pay support, the trial court must affirmatively find that the party has the present ability to pay the purge amount. Bowen, 471 So.2d at 1277 (“Without the present ability to pay from some available asset, the contemnor holds no key to the jailhouse door”).
An order holding a party in civil contempt must recite the facts upon which the finding of present ability to pay is based. Fla. Fam. L.R.P. 12.615(d)(1); Vazquez v. Vazquez, 827 So.2d 384 (Fla. 4th DCA 2002). See also Fla. Fam. L.R.P. 12.615(e) (“The court shall include in its order a separate affirmative finding that the contemnor has the present ability to comply with the purge and the factual basis for that finding”).
Pursuant to section 61.14(5)(a), Florida Statutes (2010), husband is presumed to have a continuing ability to pay the alimony award, and he had the burden at the contempt hearing of proving that he lacks *1185 the ability to pay. See Flores v. Bieluch, 814 So.2d 448 (Fla. 4th DCA 2001) (recognizing that section 61.14(5)(a) controls the burden of proof in this type of case).
A trial court’s factual finding regarding ability to pay will be sustained if supported by competent substantial evidence. See, e.g., Cleveland v. Cleveland, 841 So.2d 648 (Fla. 4th DCA 2003) (holding that competent substantial evidence did not support the trial court’s conclusory finding that husband had the present ability to pay and noting that the presumption of section 61.14(5)(a), Florida Statutes, is rebuttable).

Present Ability to Pay

At the February 22, 2011 hearing, husband testified that he has only $322 “in the world” which he could pay towards the purge. He alleged that he had, already sold all his assets and that, with a paycheck he was expecting from his marketing job the next day, he could pay a total of $622. At the November 2, 2010 hearing, husband testified that he had already sold everything he owns to buy groceries, gas, and pay bills. He acknowledged that he had received “loans” from family members over the prior months — while he continued to reside in the Palm Beach home— but that he had not kept track of exactly how much he had borrowed and expressed no intent to pay the “loans” back.
At the November 2010 hearing, husband had indicated that he was working on a deal that would yield him a $300,000 commission. He asked that he not be incarcerated so that he could work on the deal which would take months to complete. He presented no evidence regarding the status of this deal at the February 2011 hearing. Husband’s business plan of selling novelty square-inch parcels of real estate in Nantucket to tourists was “not flying.”
Husband owns a half interest in a large home on Palm Beach' Island. His mother owns the other half. Husband testified that the house is in foreclosure and has a first and second mortgage totaling about $1 million. Husband believed that the house was worth more than $1 million. He had the house listed for sale at $2.25 million but had not received any offers since March 2010. The house had been listed for rent by a real estate agent (husband’s aunt) at $11,000 per month. Husband introduced a tax lien for $541,143.50 against his mother’s half interest in the property and argued that, with the encumbrances and costs of a sale, “it’s probably about a push.”
Wife explained that the husband’s mother owns other assets besides this house and that her tax debt would not impact the husband’s equity in his half-interest in the home.
In 2010, the Palm Beach Property Appraiser listed the total market value of the property at just over $1.23 million. The evidence at the June 29, 2010 hearing established that the mortgage balance on the property was $800,000.
The trial court found that husband had the ability to pay the nearly $38,000 purge through his equity in the home and that husband could presently sell the home to pay the purge.
We agree that the record supports the first portion of this conclusion regarding the sufficiency of the husband’s equity in the home to cover the purge amount, but we are not so sure that in the presently distressed housing market husband could immediately sell the home even if he greatly reduced the price. The trial court’s stated basis for the husband’s ability to pay depends on disbursement of the proceeds from some future potential sale of the property. Because the conclusion is speculative, and the finding regarding *1186 present ability to pay is not supported by competent substantial evidence, we grant the petition and quash the trial court’s order. See Shelton v. Shelton, 965 So.2d 179 (Fla. 2d DCA 2007) (holding that trial court abused its discretion in adopting the magistrate’s finding that husband “should have” funds remaining from sale of home because the finding was based on speculation not evidence).
Throughout these proceedings, wife has presented evidence that husband has previously refused to pay alimony although he then had the ability to pay. These allegations are relevant to whether the husband should be punished for willfully violating court orders.
For example, wife presented evidence that husband had rented the Palm Beach Island home at $7500 per month from April or March 2009 until March 2010. Husband should have collected about $90,000 during this time but paid no alimony. Wife also presented a check showing that husband had paid $11,000 for his girlfriend’s child to attend private school. Husband admitted paying towards the tuition but said that he paid only $8000.
In the order entered following the June 29, 2010 hearing, the magistrate made a number of findings regarding the' husband’s ability to pay and his refusal to pay the wife any alimony. Husband admitted at that hearing that $29,000 had recently been deposited in his account but alleged that the funds belonged to his mother and that he used the money to pay expenses for her. Husband sold his Porsche 911 for $18,500 and his Rolex watch for $1200: Husband had been paying his girlfriend’s $2500 per month rent through some of this period. In early 2010, husband received $24,200 when the Breakers Hotel refunded his country club membership fee. Despite all this, husband did not pay alimony. The magistrate found that the vast majority of the husband’s testimony lacked credibility and that the husband’s lifestyle was inconsistent with his reported income. The trial court approved and adopted these findings in the order finding husband in civil contempt.
In her response to this court, wife points out that she presented evidence at the February 2011 hearing that husband had again rented the home. At a first appearance hearing held March 15, 2011 — which was not reported and is unavailable, wife represents that husband admitted that he was currently renting the property through March 2011. He did not collect rent in January 2011 — but collected $7500 rent for December 2010, February 2011, and March 2011. This testimony appears contrary to the husband’s testimony at the February 2011 hearing where he denied having other sources of income and alleged that $622 was all the money he could possibly muster.
The above evidence may be relevant to whether the husband should be punished for willfully violating court orders and whether he has divested himself of the present ability to pay. A finding that a party divested himself of assets, does not substitute for a finding of present ability to pay. Apa v. Apa, 693 So.2d 702 (Fla. 4th DCA 1997). “Criminal contempt proceedings are appropriate where the party in default has continually and willfully neglected court-ordered support obligations, or has affirmatively divested him or herself of assets and property.” Brown v. Smith, 705 So.2d 682, 684 (Fla. 4th DCA 1998) (citing Bowen, 471 So.2d at 1279).
The law is clear that husband cannot be incarcerated indefinitely for civil contempt where husband lacks the present ability to pay even if husband has willfully caused his current inability to pay. See Galligher v. Galligher, 643 So.2d 706 (Fla. *1187 4th DCA 1994); Campbell v. Campbell, 571 So.2d 555 (Fla. 4th DCA 1990).
To reiterate, we hold only that the trial court’s order finding that husband’s equity in his home gives him the present (i.e., “now”) ability to pay the purge amount is speculative and not supported by competent substantial evidence. This opinion does not preclude further proceedings regarding husband’s present ability to pay and does not preclude the trial court from initiating indirect criminal contempt proceedings if appropriate.
The trial court based its finding regarding ability to pay solely on the husband’s equity in the house. Husband has acknowledged that he has received a number of “loans” from family members throughout this time. Wife notes that husband is represented by privately-retained counsel in the proceedings below, and a different attorney was retained to file this petition. Husband is represented by different attorneys in the foreclosure proceedings. The wife has good reason to question how the husband has the money to pay his attorneys but only $622 “in the world” to pay the purge.
In some circumstances, courts have recognized that the assets of close friends and family members may be considered in determining present ability to pay a purge. See Aburos v. Aburos, 34 So.3d 131, 134-35 (Fla. 3d DCA 2010) (citing Sibley v. Sibley, 833 So.2d 847 (Fla. 3d DCA 2002), rev. denied, 854 So.2d 660 (Fla.2003), cert. denied, 540 U.S. 1109, 124 S.Ct. 1074, 157 L.Ed.2d 895, (2004), and Mendana v. Mendana, 911 So.2d 130 (Fla. 3d DCA 2005)).
We grant the petition and quash the trial court’s commitment order which found present ability to pay based on a potential future sale of real estate. The Sheriff shall immediately release petitioner as his continued incarceration is not authorized at this time. This decision does not preclude further civil contempt proceedings or indirect criminal contempt proceedings. Additionally, this opinion should not be construed as limiting the trial court’s ability to establish a different purge provision, such as one requiring husband to reduce the listing price of the house.
Petition for writ of habeas corpus granted.
GROSS, C.J., MAY and CONNER, JJ„ concur.

. Husband initially sought a writ of mandamus or prohibition to prevent the Sheriff from taking him into custody. The Sheriff subsequently arrested husband, and we have redes-ignated this case as a petition for a writ of habeas corpus.