751 So.2d 167 (2000)
Cynthia KNOFF, Appellant/Cross-Appellee,
v.
Howard M. KNOFF, Appellee/Cross-Appellant.
Nos. 2D98-995, 2D98-1247.
District Court of Appeal of Florida, Second District.
February 9, 2000.
Arnold D. Levine of Levine, Hirsch, Segall & Brennan, P.A., Tampa, for Appellant/Cross-Appellee.
Marie Tomassi and Karen E. Lewis of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, for Appellee/Cross-Appellant.
DAVIS, Judge.
Cynthia Knoff, the Wife, appeals the final judgment of dissolution of marriage, arguing that the trial court: (1) abused its discretion in failing to award her permanent alimony; (2) erred in failing to set forth in the final judgment the statutorily required findings; (3) erred by ordering her to undertake certain efforts regarding the children's religious training; and (4) erred in prohibiting her from permanently relocating the primary residence beyond a certain distance. Howard M. Knoff, the *168 Husband, cross-appeals the order awarding attorney's fees and costs to the Wife, arguing the award was founded on an improper basis. We conclude that the trial court abused its discretion in failing to award the Wife permanent alimony, erred by including in the final judgment a provision prohibiting her from relocating the primary residence, and applied an incorrect standard in awarding attorney's fees and costs to the Wife. Accordingly, we reverse on these points and remand for further proceedings. As to the other issues, we affirm.
The parties married in January 1982, and separated in May 1995, after approximately thirteen and one-half years of marriage. The parties had two children during the marriage. One was ten years old and the other five years old at the time the trial court entered the final judgment. At dissolution, the Wife was thirty-eight years old and the Husband was forty-two years old.
When the parties married, the Husband had a Ph.D. in psychology and worked as an associate university professor in Albany, New York. The Wife had obtained a liberal arts degree in psychology. For the first three years of the marriage, she worked in the hotel industry. She started out as a front desk clerk and later received a promotion to the position of front office manager. In 1985, the Husband accepted a position at the University of South Florida, and the parties relocated to Tampa. As a result, the Wife ended her employment, losing the opportunity for advancement and benefits.
When the parties moved to Tampa, they started a family and agreed that the Wife would be a homemaker and take care of the children, at least until the children reached school age. After moving to Tampa, the Wife did not seek gainful employment outside the home. Rather, she has acted as primary caregiver of the children and has participated in the children's activities. The Husband teaches psychology at the University of South Florida and runs a private consulting practice as a school psychologist.
The family lived modestly for approximately eight years after moving to Tampa. Thereafter, in 1993, the parties enjoyed a more affluent lifestyle, purchasing a $283,000 home with a three-car garage and a swimming pool. Additionally, they were able to set aside money for retirement and to make some investments. The Husband earned approximately $156,000 in 1995.
The trial court awarded the Wife $2,200 per month rehabilitative alimony for three years, rather than awarding her permanent alimony as she requested. In doing so, the trial court relied primarily upon the testimony of Dr. Michael Shahanasarian, a vocational rehabilitation expert. Dr. Shahanasarian testified that the Wife could obtain immediate employment in the hotel industry making approximately $24,000 to $28,000 per year, with a capability of earning $40,000 annually within a short period of time, and a potential of earning $60,000 per year. Based on this testimony, the trial court found that the Wife could reenter the work force and become self-supporting at a standard of living similar to that which the parties enjoyed during the marriage.
The Wife argues that the trial court abused its discretion by failing to award her permanent alimony. We agree. The purpose of awarding permanent alimony is to enable the moving spouse to maintain the lifestyle enjoyed during the marriage. See Cardillo v. Cardillo, 707 So.2d 350, 351 (Fla. 2d DCA), review denied, 725 So.2d 1107 (Fla.1998). In this case, the Wife testified that working in hotel management required long hours of perhaps sixty to seventy hours per week, as well as evenings and holidays. These hours would prevent her from caring for the children and involving herself in their extracurricular activities. This testimony was supported by that of the vocational expert, who testified that in order to work in such a job, one must be willing to work long *169 hours, evenings, weekends, and be available on call. Thus, even if the predicted earning potential in hotel management is realistic, employment in that field would disrupt the lifestyle the Wife enjoyed during the marriage and would be incompatible with caring for the children.
Moreover, permanent periodic alimony is appropriate where one spouse has foregone a career to become a homemaker and to care for the children for a significant period of time. See id. The Wife agreed to terminate her job as a hotel manager so the Husband could pursue career advancement in Florida, and she agreed to stay home to take care of the children. The parties were married for thirteen and one-half years and the Wife was not employed outside the home for approximately ten years. As in Cardillo, the Husband has certainly benefited from the Wife's agreement to forego her career to take care of the children. See id. at 350.
Finally, the great disparity in the Husband's income and the prospective income of the Wife warrants permanent alimony. See id. Given the duration of the marriage, the lifestyle enjoyed during the marriage, the Wife's agreement to forego her career for a significant period of time in order to care for the children, the needs of the Wife, and the disparity in the parties' income, we conclude that the trial court abused its discretion in not awarding the Wife permanent alimony.[1]See id.; Nelson v. Nelson, 588 So.2d 1049, 1051 (Fla. 2d DCA 1991). Accordingly, we reverse the award of rehabilitative alimony and remand with directions to the trial court to award the Wife permanent alimony, taking into consideration the most recent income enjoyed by the parties during the marriage, rather than the Wife's postseparation lifestyle.[2]See Cardillo, 707 So.2d at 351.
We agree with the Wife that the provision in the final judgment prohibiting her from relocating the children's primary residence is improper because the parties did not plead or litigate that issue below. See Young v. Young, 698 So.2d 314, 315 (Fla. 3d DCA 1997), review denied, 707 So.2d 1128 (Fla.1998). Accordingly, we strike that provision from the final judgment.
The Wife also urges this court to strike that provision in the final judgment ordering her to undertake certain efforts to assure that the children attend specified religious education sessions and services. However, she waived that issue for review because, at the temporary custody hearing, the Wife stipulated to the children's religious education and did not later object to the efforts required of her to assure the children attended these activities. We, therefore, affirm that provision of the final judgment. We also affirm on the question of the requisite findings without discussion.
Finally, we reverse the order awarding attorney's fees and costs to the Wife. It appears that the trial court improperly based its determination upon the *170 parties' net incomes as reflected in the computing of the child support guidelines. See Widder v. Widder, 673 So.2d 954, 955 (Fla. 4th DCA 1996). In determining an award of attorney's fees, a trial court must consider the parties' relative financial positions, considering all circumstances and resources. See Millen v. Millen, 658 So.2d 613, 614 (Fla. 2d DCA 1995). On remand, the trial court may reconsider the issue of attorney's fees after awarding permanent alimony to the Wife, taking into consideration the parties' relative financial positions. See Lowman v. Lowman, 724 So.2d 648, 650 (Fla. 2d DCA 1999).
Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.
CAMPBELL, A.C.J., and GREEN, J., Concur.
NOTES
[1] We are aware that the Cardillo opinion characterizes a fourteen-year marriage as a "long term" marriage. See Cardillo, 707 So.2d at 351. We construe Cardillo to mean that a marriage of that duration, coupled with the other factors discussed therein, warrants an award of permanent alimony. Cardillo's citation to Nelson on that point leads us to that conclusion. Thus, we do not interpret this court's use of the "long term" marriage terminology in Cardillo as intending to create a presumption in favor of permanent alimony in marriages of similar duration, absent other relevant factors. Additionally, we note that this court issued its opinion in Cardillo after the trial court entered its final judgment in the instant case. Therefore, the trial court did not have the benefit of Cardillo in entering its judgment.
[2] Although the final judgment reflects that the trial court found in awarding alimony that the Wife could become self-supporting at a standard of living similar to that enjoyed during the marriage, it appears that the amount of the award was in reality based on the Wife's postseparation needs.