819 So.2d 950 (2002)
Patricia BACON, Appellant,
v.
Wilton Jackson BACON, Appellee.
No. 4D00-4323.
District Court of Appeal of Florida, Fourth District.
June 26, 2002.
*951 Law Offices of Monica I. Salis, P.A., Fort Lauderdale, and Cynthia L. Greene of Law Offices of Cynthia L. Greene & Associates, P.A., Miami, for appellant.
Howard S. Friedman of Fischler & Friedman, P.A., Fort Lauderdale, for appellee.
STONE, J.
The wife appeals from a final judgment of dissolution of marriage on grounds that the trial court's award of permanent periodic alimony was an abuse of discretion. We agree and reverse. The record reflects that not all of the wife's needs were considered in arriving at the court's award of alimony and that the trial court erred in construing the limits of its discretion in awarding alimony under section 61.08, Florida Statutes.
The parties were married for twentyseven years. The husband has a successful career as a bond trader with an annual income of $288,000. There were two children born to the couple, both of whom have attained the age of majority. The wife, a high school graduate, worked only part-time as a secretary until the birth of the couple's second child. When the husband's father came to live with the family after being diagnosed with Parkinson's disease, the couple agreed that the wife would quit her job and become a full-time homemaker and caretaker of her father-in-law.
The wife sought an after-tax permanent alimony award of $8,515 per month based upon her existing expenses and the parties' standard of living. The court awarded $3,275 per month, approximately 13½% of the husband's present income. This award was based on the testimony of the husband's accountant, who claimed the wife could sustain herself on much less than she was requesting and the testimony of a vocational expert who stated she was employable. The husband's accountant/witness calculated the wife's "reasonable" future expenses to be only $6,000 per month. The vocational witness testified that the wife could earn between $17,000 and $23,000 per year if she were to commence full-time employment.
In considering the wife's needs, the court recognized that the couple had maintained a comfortable lifestyle, but accepted the deductions made by the husband's expert on the wife's estimated needs. The expert reduced the requested amount by arbitrarily deducting from the wife's current charitable contributions and her personal and household expenses based on his belief that those expenses would be less if she were living alone. In reaching his conclusion, the expert, and ultimately the trial court, assumed the wife would find a smaller home for $200,000. He predicted that once she moved in, she would have lower utilities and home care expense and would spend less time and money for travel, entertainment, civic activities, and hobbies, *952 i.e., caring for her horses and stables. The expert then allocated $20,000 for moving expenses which he assumed would be sufficient.[1]
Neither the expert nor the trial court took into consideration any increase in the wife's expenses attributable to her working a full-time job while still trying to retain her existing standard of living.
The court accepted the testimony of the husband's accountant, that by completely altering the wife's existing investment portfolio, consisting of her equitable distribution and retirement accounts, and after subtracting 20%, the amount the wife would need for a down payment on a $200,000 home, and after deducting $20,000 for incidental expenses arbitrarily allotted for move-in costs, the wife could realize an almost $2,000 per month return if she invested at 6%. In order to earn this amount, however, the wife would have to change the existing investment scheme and, in the process, suffer a substantial loss in principal. The reinvestment scheme also assumes the wife would have proceeds available from the sale of the marital home which is not yet on the market.
In summary, the court assessed the wife's needs, pre-tax, as $6,000 per month ($72,000 per year). The court concluded that the wife's needs could be satisfied by adding $23,164 in assumed interest income on investments, plus $16,000 in imputed full-time employment income, and an alimony award of $39,300 annually ($3,275 per month). In arriving at his decision, the trial judge announced that he was "required" to impute full-time employment income to the wife, notwithstanding that such was against his better judgment in this case.[2]
We recognize that as long as the award is "within the parameters of reasonableness," the trial court's alimony award should not be disturbed on appeal. Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980). However, in this case, we conclude that the court's imputation of income was an abuse of discretion, requiring reversal.
Section 61.08, Florida Statutes, provides:
In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
* * *
(g) All sources of income available to either party.
The court may consider any other factor necessary to do equity and justice between the parties.
In Mallard v. Mallard, 771 So.2d 1138 (Fla.2000), the Florida Supreme Court delineated the following criteria to be examined in awarding alimony: (a) the parties' earning ability, (b) age, (c) health, (d) education, (e) duration of marriage, (f) standard of living, and (g) the value of the parties' estate.
Although, certainly, the trial court should consider prospective employment as a potential source of income to the wife, it is also required to consider the other factors, including those "necessary to do equity and justice." See Kreisler v. Kreisler, 752 So.2d 1288 (Fla. 5th DCA 2000); Brock v. Brock, 690 So.2d 737 (Fla. *953 5th DCA 1997). Nothing in the statute mandates that minimum wage income must be immediately imputed for the purpose of reducing alimony that would otherwise be ordered. See Shrove v. Shrove, 724 So.2d 679 (Fla. 4th DCA 1999)(noting that imputation of income is only one factor that should be considered in determining alimony award but is not mandatory where child support is not at issue).
Furthermore, given the wife's lack of present employment, her acknowledged entitlement to permanent alimony, the length of this marriage, the standard of living enjoyed by the parties, and the husband's undisputed ability to pay, there is no statutory or other mandate that the trial court impute income requiring that she obtain a full-time job immediately. See Laz v. Laz, 727 So.2d 966, 967 (Fla. 2d DCA 1998); Atkins v. Atkins, 611 So.2d 570, 573 (Fla. 1st DCA 1992); see also § 61.08, Fla. Stat. (2000). Even if under the facts of this case it were found necessary for the wife to be employed, some consideration must be given to her need for rehabilitative or bridge-the-gap alimony to that end. See Canakaris, 382 So.2d at 1202; Winn v. Winn, 669 So.2d 1155 (Fla. 5th DCA 1996).
Here, the record makes it evident that the trial court misinterpreted the mandatory aspect of its obligation to consider the enumerated factors when the judge said:
I am to, in a sense, under the case law to put her [the Wife] in the same situation as she would be in if she had never met her husband, but they had maybe an arms-length transaction, gone into a joint venture, distributed their assets that they were able to marshal over twenty-seven years and leave her at the same place she would have otherwise been.
* * *
The law says and requires her to go back to work. I have to follow that law and I will. I have problems with it. I think her contribution is undervalued and I hope some day that will be rectified....
The statute, as interpreted, albeit reluctantly, by the trial court, would not allow the court to consider, for example, the fact that one spouse stays home by mutual agreement and raises the children, while the other spouse is able to accumulate twenty or more years of business or professional experience and earning ability. This interpretation would also leave the court with no discretion to remedy the glaring inequality that exists where, post-dissolution, one spouse continues to earn an income in an atmosphere of his choice, while the former homemaker, who developed no income-earning skills during the marriage, is forced to work under far more unpleasant conditions.[3]
Further, in imputing income to the wife, the court assumed that she must and could become employed immediately. At a minimum, the court should have awarded sufficient alimony to cover the wife's total present need until such time as the wife is able to find reasonable employment, at which time modification might be in order.
Although the husband correctly asserts that the wife would have a lower *954 electric bill and mortgage payment upon purchasing a smaller home, it is also true that other expenses would necessarily increase if she were working full time. Patently, if the wife must obtain employment, then many of her current expenses will change. For example, she will need to purchase work-related clothing; she may need to have those clothes dry-cleaned; she may need to buy lunch every day; she would need to use gasoline to drive to and from work; she may need to purchase prepared meals; and she may need to pay others to handle responsibilities that she might otherwise perform in maintaining her home and lifestyle. No mention was made of this inevitable fact, apparently because of the husband's concession of ability to pay and the wife's reliance on receiving her present expenses.
All other things being equal, "periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties." Canakaris, 382 So.2d at 1201 (emphasis added); Gove v. Gove, 579 So.2d 756, 757 (Fla. 4th DCA 1991); see also Knoff v. Knoff, 751 So.2d 167, 167 (Fla. 2d DCA 2000). Here, maintaining that standard of living for both parties did not mandate paring the wife's expenses and maximizing her income while, at the same time, disregarding the ability of the husband to more fully participate in her support without sacrificing his own standard of living. The goal is to afford her the style of living that the parties, together, established over a period of twenty-seven years.
As the record reflects that the wife was short-changed by the totality of the foregoing, we reverse the judgment and remand for the trial court to reconsider the amount of alimony.
HAZOURI, J., concurs.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
I agree with the reversal because a party entitled to alimony was "shortchanged". See Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980) ("in viewing the totality of the circumstances, one spouse should not be `shortchanged.'"). I write, however, to express my view that broad discretion in the award of alimony is no longer justifiable and should be discarded in favor of guidelines, if not an outright rule.
This case admirably illustrates the need for reform. The parties may quibble over other details, but the essential facts in outline are these: (1) long term marriage (27 years) with no children still in their minority; (2) a party with annual income of $288,000; (3) the other party, who hasn't worked outside the home since early in the marriage, has imputable wages no better than minimum. Canakaris establishes a policy of discretion rather than rules in the determination of alimony, which the Legislature has been loathe to contradict. This policy favoring discretion and under the reasonableness test of Canakaris the broadest and most deferential one, at that[4]in determining claims of *955 alimony is now under serious challenge in the literature.[5] I think entitlements to alimony ought to be standardizedi.e., set by guidelines which the trial judge can vary within fixed limits only upon reasons supported by the record.[6]
In this case, the party seeking alimony asked for $8,500 monthly, or little more than 35% of the payor's $288,000 annual income. The amount actually awarded by the trial judge comes to about 14% of the payor's income.[7] In Canakaris, the payor's annual income was almost $150,000, and the annual alimony awarded was $26,000 or about 17% of the payor's income. The supreme court found that amount "neither unreasonable nor arbitrary," explaining:
"We acknowledge that reasonable persons might differ as to what is an appropriate sum for permanent periodic alimony in this cause, but we find it is within the parameters of reasonableness; therefore, there can be no finding of an abuse of discretion."
382 So.2d at 1204. If 17% for the functionally equivalent range of income was "neither unreasonable nor arbitrary," then 14% is probably within the range of discretion as well.
Without guidelines or standards the amount awarded in this case could well appear to some judges to be within the general ambit of "reasonableness," especially if the trial judge could properly consider, as the majority acknowledges, imputing minimum wage income to a party who has not worked in 28 years but seems otherwise able to do so. Thus, under Canakaris it can be plausibly argued that this award is not an abuse of discretion.
The Canakaris insistence on discretion makes the amount of alimony almost always a subject of litigation. When a critical issue may be resolved only in litigation, outcomes are not predictable and a strong incentive for settling is removed. Because chapter 61 contains a provision providing for an adverse party to pay the attorney's fees of the other party,[8] incentives to litigate are even intensified, and family assets are placed in peril of being lost to fees and costs that would otherwise be avoided if outcomes were predictable. Assets given to fees and costs are not available to provide income and support to families; nor are they available for descent and distribution to children.
If I were the Legislature setting guidelines for alimony for cases within the essential *956 facts of this category, 35% of a payor's income could be within a reasonable range.[9] Under the partnership theory of marriage and alimony,[10] 35% of payor's income is not unjustifiable for incomes ranging above $200,000. A statute setting such guidelines would add a world of predictability to dissolution of marriage litigation, thereby operating to promote settlements and reduce attorney's fees and thus avoid costly and time-consuming appeals like this one.
NOTES
[1] It is not clear whether this sum includes the costs incident to renovating a used home or adding extras to the base price of a new home, or is limited to the cost of moving, financing, and furnishing.
[2] The court made other comments indicating the court's view that women such as this wife were placed in this disadvantageous dilemma because of the success of the "feminists."
[3] We do note that in Crowley v. Crowley, 672 So.2d 597 (Fla. 1st DCA 1996), the trial court awarded an amount of alimony "sufficient to place her in a position substantially similar to that she would be had the marriage not occurred." Id. at 599. The First District reversed, stating: "The husband has not cited, and we have not found, any authority that would support the trial court's effort to use the alimony award to place the wife in the financial position she would have occupied had the 19 year marriage not occurred. To the extent the award reflects this effort, it is erroneous." Id.
[4] In Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980), the court held that "where the action of the trial judge is within his judicial discretion, as in the establishment of the amount of alimony or award of child custody, the manner of appellate review is altogether different." [e.s.] The court went on to define the scope of review of discretion thus:

"Discretion ... is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court. If reasonable [minds] could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."
382 So.2d at 1203. The supreme court quoted the standard from Delno v. Market Street Ry. Co., 124 F.2d 965, 967 (9th Cir.1942)-which, it should be stressed, rejected it as a single standard for all review of trial court discretionary decisions.
[5] See, e.g., Ira Mark Ellman, Inventing Family Law, 32 U.C. DAVIS L.REV. 855 (1999); Ira Mark Ellman, The Maturing Law of Divorce Finances: Toward Rules and Guidelines, 33 FAM. L.Q. 801 (1999); Charles J. Aldrich, The Spousal Support Scheme in Ohio under 3105.18: Trial Courts Have Too Much Discretion, 22 OHIO N.U.L.REV. 815 (1996); Marsha Garrison, How Do Judges Decide Divorce Cases? An Empirical Analysis of Discretionary Decision Making, 74 N.C. L. REV. 401 (1996); Jane C. Murphy, Eroding The Myth of Discretionary Justice in Family Law: The Child Support Experiment, 70 N.C. L. REV. 209 (1991); and Mary Ann Glendon, Fixed Rules and Discretion in Contemporary Family Law and Succession Law, 60 TUL. L.REV. 1165 (1986).
[6] Compare § 61.30, Fla. Stat. (2001) ("For combined monthly available income greater than [$10,000 monthly], the obligation shall be the minimum amount of support provided by the guidelines plus the following percentages multiplied by the amount of income over $10,000....").
[7] The recipient also has annual investment income of $23,000.
[8] See § 61.16, Fla. Stat. (2001).
[9] On the other hand, with the payor's income in the range well above $200,000, the amount actually awarded seems to me miserly.
[10] Cf. § 61.075(1), Fla. Stat. (2001) ("in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal....").