915 So.2d 281 (2005)
Harriet SUSSMAN, Appellant,
v.
Melvin SUSSMAN, Appellee.
No. 4D04-3804.
District Court of Appeal of Florida, Fourth District.
December 7, 2005.
*282 J. Scott Gunn of J. Scott Gunn, P.A., Fort Lauderdale, for appellant.
Stephen P. O'Toole, West Palm Beach, for appellee.
WARNER, J.
Following the dissolution of the parties' forty-seven year marriage, the wife appeals the final judgment in which the trial court determined that she had not proven her present need for, or the husband's ability to pay, alimony in excess of the temporary award amount. Because there is ample evidence in the record which shows both a need for additional alimony and the ability to pay more than the temporary *283 award, we reverse for reconsideration of the issue.
The wife filed a petition for dissolution of marriage in December 2002. In July 2003, the parties entered into an agreed order in which they agreed to sell the marital home, and determined the wife would stay in the home until its sale. The husband also agreed to pay the wife $1,000 per month as temporary alimony. The wife was permitted to pay the expenses of the home from marital funds. Thus, the temporary award covered expenses such as food and clothing, but not home expenses.
Home expenses of taxes and homeowners' association fees for the two years prior to the sale of the property amounted to approximately $10,000. In the final judgment, the trial court divided these expenses equally between the parties.
At trial the court heard testimony from both the husband and the wife regarding their marriage. The parties have been married for forty-seven years and have two adult children. When the children were very young, the wife stayed at home with them. During the course of the marriage, the wife held several part-time jobs, and also obtained full-time employment for a total of approximately twenty years. After retirement, she received a pension and social security of approximately $926 per month.
The husband was employed as an air traffic controller and made substantially more income than the wife. He retired because of a disability in approximately 1980, and he received a monthly income of $5,059, which was reduced to $4,300 upon dissolution of marriage. He now receives VA benefits of $104 per month. Thus, his income after dissolution amounts to approximately $4,400 per month, and the wife's income amounts to $926 per month prior to any award of alimony.
At the time of the parties' separation, they lived in a 3400 square foot home in Boca Raton. The house had four bedrooms and a pool, and the parties agreed to sell it as part of the order on temporary relief. The parties also had investments and savings accounts which the husband managed. The wife received around $70,000 from those accounts and used them during the pendency of this action to pay for her expenses and those of the marital home. When the house was sold, the wife received $200,000 and the husband received approximately $280,000, as agreed by the parties to offset joint monies obtained by the wife.
Prior to the separation, the wife drove a larger vehicle but traded it in to lessen the payments. She now pays $255 per month on her replacement vehicle. After the sale of the marital home, she purchased a new home and has a mortgage on the home, although there was no testimony as to the amount of the monthly payment. She paid a down payment of $17,000. The husband also purchased a new home for $275,000, with a ten percent down payment. His mortgage payments are $860 per month. He has many other expenses with his new home, including association fees of $3,000, real estate taxes, and the like.
Prior to the separation, all bills were paid out of the parties' joint income. The wife testified that because she does not have the money which formerly was available to pay their joint expenses, she is financially burdened, particularly with respect to paying for groceries and clothing. In the wife's financial affidavit, she listed over $10,000 per month in expenses prior to the sale of the marital home including $500 per month for food, $2,350 in home expenses, $300 per month in clothing, and over $600 in car expenses, which she testified decreased by slightly over $100 with *284 the purchase of the less expensive vehicle. The husband listed expenses of $3,850, which included $550 per month for food, $250 for clothing, $460 for car expenses, and over $2,000 in house expenses, such as the mortgage, taxes, and utilities. Thus, the basic expenses of the parties were roughly equivalent. However, in her financial affidavit, the wife also listed the additional expense of joint credit card debt and the increased cost of the marital home, which was sold.
In its final judgment, the court made the following determinations with regard to alimony:
The wife seeks and the husband agrees that she is entitled to permanent periodic alimony; the parties disagree as to the amount, the wife claiming $2,218.44 a month and the husband claiming $1,000 a month as determined in the agreed order on temporary relief. The wife did not prove her need for the amount of alimony she claims or that the husband can afford to pay it. She argues that because the husband pre-separation deposited his disability checks into the family account and they had equal use of it, she is entitled to an amount equal to one-half of his future disability payments. This is not the criterion for determining alimony and does not establish her present need for or his ability to pay that amount.
The court has considered the factors for the standard of living established during the marriage, the duration of the marriage, the age and physical and emotional condition of each party, the financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each, the contribution of each party to the marriage including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party, all sources of income available to either party and all other relevant evidence. The court finds that the husband shall pay the wife directly permanent periodic alimony in the amount of $1,000.00 per month....
The wife appeals the trial court's determination of alimony, contending that the $1,000 award is clearly inadequate to support her at the standard of living established by the parties and that given the length of the marriage and their standard of living, the parties ought to divide their income. While we agree with the court that mere equalization of the parties' income is generally not the proper method of determining the appropriate alimony, the trial court erred in determining that there was no evidence of her need for alimony in excess of the $1,000 temporary alimony award and that the husband did not have the ability to pay some additional amount of alimony.
A trial court has considerable discretion in determining an award of alimony. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980); Ondrejack v. Ondrejack, 839 So.2d 867 (Fla. 4th DCA 2003). Permanent alimony is appropriate where the requesting spouse cannot support herself in accordance with the lifestyle of the marriage. See Bucknam v. Shelton, 849 So.2d 1204, 1206 (Fla. 5th DCA 2003). However, before a court can determine the proper amount of an award of alimony, the court must first determine the actual need and the ability to pay. Beck v. Beck, 852 So.2d 934 (Fla. 2d DCA 2003). In this case, the husband conceded that the wife was entitled to permanent alimony. However, the court determined that the wife did not prove that she required more than $1,000. Thus, the court found that the wife would not need more than $1,926, the award plus her own disability *285 income, to support herself in the standard of living of the marriage.
This finding is simply not supported by the evidence presented at trial. The parties' lifestyle at the time of their separation was more than comfortable. They lived in a large house, that had expenses of more than $2,500 per month without a mortgage payment. One need only look at both parties' financial affidavits to know that their standard of living in the marital home and otherwise was far from frugal. After separation, the wife testified that on the temporary alimony award she was given she had to scrimp on groceries and clothing compared to her spending during the marriage. Nevertheless, the expenses she listed in her financial affidavit were equivalent to those of the husband, and his also substantially exceeded $2,000 per month.
Furthermore, the temporary award itself shows that the wife would need more than $1,000 per month. In that order, the wife was allowed to live in the marital home until sold and to pay its expenses out of existing marital funds. If the court were simply to rely on the temporary order, the wife would need additional funds in excess of the $1,000 plus her income to find substitute housing.
While the standard of living of the marriage was obviously substantial, it is also clear that both parties cannot enjoy the same standard of living as they did during the marriage. The approximately $6,000 per month in combined income cannot support two separately at the same standard of living that the parties together enjoyed. See Pirino v. Pirino, 549 So.2d 219 (Fla. 5th DCA 1989). "Clearly the husband cannot be required to maintain the wife's standard of living when this maintenance stretches beyond his financial capacity." Id. at 220. However, an alimony award should ensure that considering all of the circumstances, one party is not "shortchanged." Canakaris, 382 So.2d at 1204.
In this respect, on the facts revealed in this record, the wife is left with substantially less on which to live than the husband. While the dissent points out that the husband runs a deficit, the wife, with similar expenses, will have an even larger deficit. Although the dissent states, and we agree, that it is impractical to expect the same amount of fixed income to support both households at the same standard of living enjoyed during the marriage, the dissent approves allowing the wife to live at a lesser standard of living than the husband can enjoy after the dissolution. We think this is the type of "shortchanging" that Canakaris sought to correct, and the court did not provide any explanation as to why the wife was left with less than the husband to cover her expenses in this long, long-term marriage.
In Cooley v. Cooley, 409 So.2d 533, 534 (Fla. 4th DCA 1982), in a twenty-two year marriage, we said of a similar alimony payment:
The fact that the wife may, with her own earnings plus alimony, be able to provide basic food, shelter, and necessities, does not mean that this is the maximum she is entitled to receive after 22 years of participation in the partnership of marriage. Her standard of living during the marriage was considerably higher than "the bare necessities" and husband can clearly afford greater payments.
Here, after a forty-seven year marriage, Cooley's statement is all the more relevant.
The husband's income is four times more than that of the wife. He has some ability to pay alimony in excess of the temporary award. Because the trial court's determination that the wife had no need for alimony in excess of that awarded was *286 not supported by the record, we reverse for reconsideration of this issue of alimony.
We note that the trial court did not make specific findings, as it is statutorily required to do, with respect to the statutory factors enumerated in section 61.08(2), Florida Statutes. Section 61.08(1) requires the court to "include findings of fact relative to the factors enumerated in subsection (2) supporting an award or denial of alimony." The court listed those factors in its final judgment, but did not make findings of fact with respect to them. Although the parties did not raise this as a reversible error, it has impeded our review. When the trial court reconsiders the issue of alimony, it should make specific factual findings with respect to the statutory factors. See Ondrejack, 839 So.2d at 871.
HAZOURI, J., concurs.
GUNTHER, J., dissents with opinion.
GUNTHER, J., dissenting.
I respectfully dissent.
The parties to this long-term marriage both live on fixed incomes. It is undisputed by the parties that the former husband has a fixed income of $4,404 per month after his disability benefits are reduced due to the dissolution of marriage. It is equally undisputed by the parties that the former wife has a fixed income of $980 per month. As a result of the trial court's order granting the former wife $1,000 per month of permanent periodic alimony, the gross monthly incomes of the parties are $3,404 per month for the former husband and $1,980 per month for the former wife. Further, it is uncontested that the distribution of marital assets and liabilities was evenly split, as both received over $200,000 in cash from the sale of the marital home[1] and the minimal debts were equally assessed.
The sole issue raised on appeal by the former wife is the alleged inequity of only $1,000 per month of permanent periodic alimony. She contends she is entitled to an equal split of the combined income, essentially an additional $712 per month. After hearing testimony from both the former wife and former husband, the trial judge issued an order that granted alimony in the amount of $1,000 per month, and stated the "former wife did not prove her need for the amount of alimony she claims or that the husband can afford to pay it."
An award of alimony is reviewed using the abuse of discretion standard. See Ondrejack v. Ondrejack, 839 So.2d 867, 870 (Fla. 4th DCA 2003). "If reasonable [minds] could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." Bacon v. Bacon, 819 So.2d 950, 954 n. 4 (Fla. 4th DCA 2002) (Farmer, J., concurring specially) (quoting Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980)). However, if a trial judge "fails to apply the correct legal rule ... the action is erroneous as a matter of law." Ondrejack, 839 So.2d at 870 (quoting Kennedy v. Kennedy, 622 So.2d 1033, 1034 (Fla. 5th DCA 1993)).
The majority relies on to Cooley v. Cooley, 409 So.2d 533 (Fla. 4th DCA 1982), to support a reversal. In Cooley, standard of living was a necessary element in determining the propriety of an alimony award, but so too was the husband's ability to pay. In reversing an award of alimony, the court noted that the "husband can clearly afford greater payments." Id. at 534 (emphasis *287 added). Such is not the case herein, as the lower court concluded that the former wife failed to prove the former husband had the ability to pay more.
What should be noted is that after paying $1,000 per month in alimony, the former husband has a net deficit per month of $632, based on his financial affidavit. Thus, the trial court's conclusion that the former wife has failed to prove the former husband's ability to pay more alimony is supported by the record. Any additional obligation that the former husband must incur would require him to dip further into his savings or deplete his capital assets at an increased pace. This court has been loath to require such actions. See Dervishi v. Dervishi, 905 So.2d 932, 934 (Fla. 4th DCA 2005) ("To this end, `the law does not require that an ex-husband necessarily sell capital assets to pay alimony. Nor is an ex-husband necessarily required to borrow money to be able to maintain a court ordered level of alimony payments.'") (quoting Kinne v. Kinne, 599 So.2d 191, 194 (Fla. 2d DCA 1992)).
Finally, I also believe it is important to point out that the former husband's financial affidavit lists monthly expenses of only $3,858 per month, far below the former wife's monthly expenses of $10,671.63. Ruling as it did, the trial court obviously rejected as unnecessary some of the former wife's alleged expenses set forth in her affidavit. If the trial court, upon remand, follows the majority's direction to increase the alimony award, it appears the former husband will be punished for limiting his monthly expenditures while the former wife will be rewarded for her failure to do the same. Had the former husband submitted a financial affidavit listing essentially the same expenditures as that of the former wife (thus equalizing their post-marriage standards of living), the net result would have put the former husband at a monthly net deficit of $7,267, roughly the equivalent of that of the former wife, an $8,278 per month deficit.
I would affirm the judgment below because I find no abuse of discretion in the trial court's determination of the amount of alimony. The record supports the conclusion that the former wife failed to prove both that the former husband could afford to pay additional alimony and that the former wife needed the amount of alimony she claimed.
NOTES
[1] The former wife did receive a smaller share of the proceeds; however, this discrepancy was due to her desire to purchase certain items of marital property out of the funds she would otherwise have received.