ALTENBERND, Judge.
Camille Sockwell appeals two orders holding her in indirect criminal contempt. These orders arise from proceedings in truancy court. Although the orders apparently have been rendered moot by subsequent events, we write to reverse them because the errors requiring reversal are clearly capable of repetition in Charlotte County’s truancy proceedings.
We are concerned that the court in Charlotte County is treating truancy court as a quasi-criminal court, in which indirect criminal contempt proceedings — initiated, prosecuted, and adjudicated by the judge — are a common form of punishment.[1] It appears that the legislature in *587 tended a truancy proceeding under section 984.151, Florida Statutes (2008), to be a rather informal, but stern, effort by the circuit court to convince a family to send its children to school. If a truancy proceeding does not succeed after a relatively short period, the statute contemplates that the state should address the continuing truancy issue by a petition for child in need of services under section 984.15. See § 984.151(8). Such a petition for child in need of services can provide greater due process to the family and a wider array of solutions to the trial court. Because truancy court orders are rarely, if ever, appealed due to the informal nature of the proceedings, we take this opportunity to describe these relatively new courts and the unusual procedures used in them. Following that description, we will address the technically separate, common law contempt proceedings that spawned these appeals.
I. THE TRUANCY COURT PROCEEDINGS IN THIS CASE
Ms. Soekwell had two separate truancy court proceedings in Charlotte County concerning two of her teenage children. These proceedings began in February 2009 and were ongoing in January 2011, when these consolidated appeals were filed. Ms. Soekwell was required to attend more than thirty midday hearings at the courthouse, usually with one of her children, for these proceedings. More than ten orders to show cause threatening indirect criminal contempt were filed in these proceedings directed to either Ms. Soekwell or one of her children. The court entered orders compelling drug testing by the probation department and more than twenty-five “truancy court orders.” These proceedings ended only when Ms. Soekwell and her family moved outside this school district while this appeal was pending.
We are convinced that these two proceedings should have been transformed into petitions for children in need of services long before the trial court entered the two contempt-orders on appeal. As we explain in section II of this opinion, we believe that the legislature intended the court’s order to attend school to be the final appealable order in these proceedings. We do not believe that the legislature intended the court to enter multiple, nonfinal “truancy court orders” in the manner that the orders were entered by this circuit court.
II. THE EMERGENCE OF TRUANCY COURTS
In the 1990s, legal and scholastic efforts began focusing on the correlation between truancy and family life, and, accordingly, legislatures placed an emphasis on programs addressing truancy. Among the programs created to confront truancy, many states opted for a program that included a judicial component, resulting in the creation of truancy courts.[2] These programs are undoubtedly worthwhile, but they fall within the general category of therapeutic justice, in which judges are often called upon to act more as stern social workers than as neutral arbiters of disputed legal issues. When judges are called upon to serve in these different *588 roles, it is not unusual that judicial rules of procedure and our normal judicial protocols simply do not align with the therapeutic function. A disconnect exists between the goals of the statutes and our normal approaches to due process. This appears to be the case when it comes to truancy court in Florida.
The Florida Legislature first created truancy courts in 1999. See ch. 99-398, § 75, at 4366-67, Laws of Fla. The relevant statute now states in its entirety:
984. 151. Truancy petition; prosecution; disposition
(1) If the school determines that a student subject to compulsory school attendance has had at least five unexcused absences, or absences for which the reasons are unknown, within a calendar month or 10 unexcused absences, or absences for which the reasons are unknown, within a 90-calendar-day period pursuant to s[ection] 1003.26(l)(b), or has had more than 15 unexcused absences in a 90-calendar-day period, the superintendent of schools may file a truancy petition.
(2) The petition shall be filed in the circuit in which the student is enrolled in school.
(3) Original jurisdiction to hear a truancy petition shall be in the circuit court; however, the circuit court may use a general or special master pursuant to Supreme Court rules. Upon the filing of the petition, the clerk shall issue a summons to the parent, guardian, or legal custodian of the student, directing that person and the student to appear for a hearing at a time and place specified.
(4) The petition must contain the following: the name, age, and address of the student; the name and address of the student’s parent or guardian; the school where the student is enrolled; the efforts the school has made to get the student to attend school; the number of out-of-school contacts between the school system and student’s parent or guardian; and the number of days and dates of days the student has missed school. The petition shall be sworn to by the superintendent or his or her des-ignee.
(5) Once the petition is filed, the court shall hear the petition within 30 days.
(6) The student and the student’s parent or guardian shall attend the hearing.
(7) If the court determines that the student did miss any of the alleged days, the court shall order the student to attend school and the parent to ensure that the student attends school, and may order any of the following: the student to participate in alternative sanctions to include mandatory attendance at alternative classes to be followed by mandatory community services hours for a period up to 6 months; the student and the student’s parent or guardian to participate in homemaker or parent aide services; the student or the student’s parent or guardian to participate in intensive crisis counseling; the student or the student’s parent or guardian to participate in community mental health services if available and applicable; the student and the student’s parent or guardian to participate in service provided by voluntary or community agencies as available; and the student or the student’s parent or guardian to participate in vocational, job training, or employment services.
(8) If the student does not successfully complete the sanctions ordered in subsection (7), the case shall be referred to the case staffing committee under s[ection] 984.12 with a recommendation to file a child-in-need-of-services petition under s[ection] 984.15.
*589 (9) The parent, guardian,- or legal custodian and the student shall participate, as required by court order, in any sanctions or services required by the court under this section, and the court shall enforce such participation through its contempt power.
§ 984.151, Fla. Stat. (2012).
Several aspects of this statute warrant comment. First, the petition is filed by “the superintendent of schools.” In Charlotte County, the petition is signed by the superintendent’s delegate, a school board employee who is the director of student intervention and dropout prevention services. Another school board employee attends the hearings without a lawyer.[3] The parent and student also attend without representation. As a result, the only person in the courtroom trained in the law is the judge. Thus, it is only natural that the hearings are informal, and the judge tends to serve in roles beyond that of a neutral arbiter.
Second, the legislature inserted this new statute into chapter 984, which deals with children and families in need of services. It immediately follows section 984.15, which describes the content of a petition for a child in need of services.[4] However, the statute does not require the petition to be filed in the juvenile division.[5] The Florida Rules of Juvenile Procedure have no rules governing truancy court. Indeed, there appear to be no rules of procedure for such courts.
These cases can be delegated to a hearing officer or magistrate. In this case, Ms. Sockwell’s proceedings were conducted by a county court judge. In light of these informalities, it is' not surprising that the legislature mandated in section 984.151(8) that the trial court refer the family’s case to the case staffing committee with a recommendation to file a child-in-need-of-ser-viees petition under section 984.15 if the student does not successfully complete the ordered sanctions.[6] Such a referral allows for the family’s care to be transferred to a circuit court judge in a juvenile division subject to the Florida Rules of Juvenile Procedure. See Fla. R. Juv. P. 8.601.
Finally, similar to a dependency proceeding, we believe that the order under section 984.151(7) compelling the student to attend school and the parent to ensure that attendance is the final appeal-able order in such a proceeding. See In re M.V.-B., 19 So.3d 381, 384-85 (Fla. 2d DCA 2009). Otherwise, the proceeding would not appear to be designed ever to reach a final order except for the simple order of dismissal when the student complies or fails to comply with the attendance requirement. Once the final order is entered, the trial court can enter orders monitoring the case as in a dependency proceeding. Just as an unsuccessful dependency proceeding can become a termination proceeding, an unsuccessful truancy *590 court proceeding transitions into a child-in-need-of-services proceeding.
In this case, the standard form “truancy court order” does recognize the distinction between a disposition order and a review order, but the form itself can be used for a trial, a disposition, or a review hearing. It has several standard orders, a place to check the box for some additional orders, and then an area in which to write “other orders.” At a minimum, the form makes it difficult to know what was actually ordered in the initial section 984.151(7) order and what is newly ordered in the many review orders.
III. THE INADVERTENT SHIFT TO A CRIMINAL MODEL FOR TRUANCY COURT
As explained above, the courts created no rules of procedure for these new courts in 1999 and apparently have created no rules thereafter. Faced with this void, in December 2000, the Florida Department of Education issued Technical Assistance Paper 10841 on compulsory school attendance.[7] That paper explained the difference between a child-in-need-of-services petition and a truancy court petition. It recognized that Escambia County had already developed a model for truancy court process. Attached to the paper — as appendix E — were copies of the truancy petition and the policies and procedures in Escambia County. The petition used in Charlotte County appears to have been based on these model procedures.
Unfortunately, the model procedures were written in criminal terminology. The child and the parent were summoned for an “arraignment.” If the child or parent admitted the contents of the petition at arraignment, then they were “sentence[d]” pursuant to section 984.151(7). Section 984.151 as quoted above does not contemplate arraignments or sentences. Truancy court was intended to be a precursor to a child-in-need-of-services proceeding. It was not a precursor to a juvenile delinquency proceeding or an adult county court criminal proceeding.[8]
Section 984.151(9) requires the parent and the student to “participate ... in any sanctions or services required by the court.” If a parent does not participate in these sanctions or services, the legislature authorizes the court to enforce participation through use of its contempt power. The legislature does not specify whether it intends the court to use civil or criminal contempt in this context.
The sanctions and services referred to in section 984.151(9) are delineated in section 984.151(7). In subsection (7), the court is required to order the student to attend school and the parent to ensure that the student attends school. The court has the discretion to order the student and the parent to “participate” in a variety of “sanctions” and “services.” Thus, the contempt power authorized in subsection (9) actually appears to address participation in these sanctions and services rather than actual attendance at school. We are not suggesting that the court lacks the power to enforce its order to attend school by use of contempt, but merely that the Legislature was more focused on the sanctions and services. This case at least suggests that it is far easier to prove a willful failure *591 to complete one of the specified sanctions than to prove that a student’s tardiness or failure to attend school on multiple days is a willful violation of a court order subjecting the parent to a contempt proceeding.
IV. THE INDIRECT CRIMINAL CONTEMPT PROCEEDINGS
We have provided the preceding sections of this opinion, which admittedly are dicta, because they form an important backdrop to the criminal contempt proceedings. The final indirect criminal contempt proceeding relating to Ms. Sock-well’s teenage son was commenced by an order to show cause issued to Ms. Sockwell in November 2010. That order to show cause alleged that she should be held in contempt for “failure to ensure school attendance” and “failure to arrive at school timely.” For each charge, the order to show cause listed a series of dates when Ms. Sockwell’s son either failed to attend school or was late to school. Given that the school board has no attorney involved in these cases, the order to show cause and all of its specific allegations were prepared by the court and signed by the judge.[9]
The truancy court appointed a public defender to represent Ms. Sockwell. The public defender had a conflict and, thus, was replaced by regional conflict counsel. Counsel appeared for the hearing, admitting that he had seen only the order to show cause and “no other supporting documentation.”
The judge proceeded with the hearing by calling his first witness, who was a representative of the school board. He asked the witness a series of questions designed to introduce certain computer records of school attendance. When the judge attempted to move the records into evidence, Ms. Sockwell’s attorney objected. The trial court heard this argument, overruled the objection, and, as judge, introduced into evidence the documents that he was attempting to place into evidence as prosecutor.
The judge, as prosecutor, presented no evidence beyond the computer records provided by the school board employee. There was no evidence that Ms. Sockwell willfully disobeyed any court order on any of the days alleged in the order to show cause. Since the court had ordered Ms. Sockwell to ensure that her son attended school, it ruled that “the existence of that court order creates a presumption of ability to comply.” The court essentially relied on its earlier orders in the truancy case to shift the burden of proof in the indirect criminal contempt proceeding to Ms. Sock-well. It then found her guilty of contempt, apparently as to all dates. The court ordered that she be placed on probation for six months for the offense of contempt of court. As part of Ms. Sockwell’s probation, the court explained:
The terms of that probation would include a requirement that you be responsible for your cost of supervision, which, based on the prior information you provided with regard to your family circumstances and finances are gonna be set at $10 per month. You will be responsible for the statutory court costs required by law, which are $200. Those will be due within the first five months of your probationary period. You may do community service to work off that ... your *592 court costs.... [T]he requirement of your probation would be that you would comply with the truancy Court Order that relates to Erik Sockwell, that currently exists, or as it may be modified during the term of your probation.... You would additionally be required to complete ... 50 hours of community service as a sanction, and you would also be sentenced to serve 10 days in Charlotte County Jail with credit for time served. That 10 day sanction will be suspended on a day to day basis pending your successful completion of this new term of probation. If you do violate your probation, then, in essence, you would be imposing upon yourself a 10 day jail sanction.
There are times when a judge can properly preside at an indirect contempt proceeding. See Fla. R.Crim. P. 3.840. But as recognized in Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985), criminal con-temnors are entitled to the same constitutional due process protections as other criminal defendants. In this case, the judge played the role of both prosecutor and judge in a complex case that required the prosecutor to prove that Ms. Sockwell intentionally violated the attendance order on multiple days.
The court’s reliance on the presumption created by its earlier orders simply did not suffice to prove contempt beyond a reasonable doubt. It appears that the judge may have been loosely equating this situation to a civil contempt proceeding arising from a dissolution proceeding where the present ability to pay sometimes can be presumed if the court has made earlier determinations about such ability. See generally Elliott v. Bradshaw, 59 So.3d 1182 (Fla. 4th DCA 2011). In a dissolution proceeding a party has control over his or her assets and reasonably can be expected to use that control to transfer assets to the other spouse. A parent’s control over a teenager in a truancy matter is an entirely different matter. A willful violation of an order that requires a parent to ensure the student’s attendance must be established with proof beyond the student’s mere absence.
In this indirect criminal contempt proceeding, the movant, which appears to have been the court, had the burden to establish beyond a reasonable doubt that Ms. Sockwell willfully violated the earlier court order. See Bowen, 471 So.2d at 1280. That burden was not met, and we thus reverse the order of contempt. For the same reason, we reverse the order of contempt entered in the daughter’s truancy court proceeding.
Reversed and remanded.
KELLY and BLACK, JJ., Concur.

. This court has already reversed two orders of indirect criminal contempt from the truancy court in Charlotte County. See S.G. v. Vurro, 77 So.3d 897 (Fla. 2d DCA 2012); Ensign v. State, 67 So.3d 353 (Fla. 2d DCA 2011). We have granted a petition for habeas corpus from a truancy court in Hendry County. See J.F. v. Whidden, 86 So.3d 1125 (Fla. 2d DCA 2011) (table decision). We would suggest it might be useful for the Twentieth Circuit to reexamine its procedures for these *587 unusual truancy courts to determine whether they could be improved.

. See Model Truancy Prevention Programs, Am. Bar Ass’n: Criminal Justice Section, 1 (Nov. 29, 2010), http://www.americanbar.org/ content/dam/aba/publishing/ criminal-jus-tice_section_newsletter/ crimjust_juvjus_tru-ancypreventionprograms.authcheckdam.doc; Martha Yeide & Mel Kobrin, Truancy Literature Review, Dev. Servs. Grp., 1 (Oct. 15, 2009), ht tp://www.ojjdp.gov/dso/Truancy% 20Literature% 20Review.pdf.

. It does not appear that the superintendent or his delegate are ever represented by a lawyer in this process.

. The placement of section 984.151 is logical, but it separates section 984.15 from section 984.16, which contains the provisions dealing with process and service of a petition under section 984.15. It does not appear that the content of section 984.16 is intended to apply in a proceeding under section 984.151.

. These proceedings appear to be handled in unified family courts or juvenile divisions in most circuits. See, e.g., Fla. 6th J. Cir. Admin. Order No.2010-047 PI-CIR. (Fla. Aug. 26, 2010); Fla. 13th J. Cir. Admin. Order No. S-2011-048 (Fla. Oct. 1, 2011).

. There is no order in our record referring these two cases despite the ongoing attendance issues and the frequent orders commencing contempt proceedings.

. See Compulsory School Attendance: Update, Fla. Dep’t of Educ., 1 (Dec.2000), http://www. fldoe.org/ese/pdf/y200 l-2.pdf.

. There is a separate criminal statute addressing truancy. Section 1003.27(7)(a), Florida Statutes (2009), establishes a second-degree misdemeanor for parents who refuse or fail to have their children attend school on a regular basis. Thus, the maximum penalty for this violation is sixty days’ imprisonment. See § 775.082(4)(b), Fla. Stat. (2009).

. The order informs Ms. Sockwell that she must appear in court for these charges on February 3, 2010, even though the order was issued months later. This typographical error apparently did not result in confusion in this case. The order also states that the contempt proceeding will be conducted pursuant to Florida Rule of Juvenile Procedure 8.150. This is the contempt rule applicable to juvenile delinquency proceedings, which would appear to have no application in this context.