IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JONATHAN SCOTT NATION,

     Appellant,

v.

BRITTANY GENE BOLING,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-0829

Opinion filed December 8, 2016.

An appeal from the Circuit Court for Bay County.
Brantley S. Clark, Jr., Judge.

Jeffrey P. Whitton, Panama City, for Appellant.

Graham Clarke, Panama City and Clark T. Rogers, Panama City, for Appellee.

PER CURIAM.

     Jonathan Scott Nation ("Nation") appeals the circuit court's order adopting a hearing officer's recommendation of contempt and incarceration for failure to pay child support. Nation argues that the contempt order's finding that he was able to pay support as ordered is not supported by substantial, competent evidence. We agree and reverse.

Pursuant to final judgment dated May 28, 2009, Nation is required to make monthly child support payments of $620. In January 2015, the Department of Revenue filed a motion on behalf of the mother, Brittany Boling ("Boling"), seeking to hold Nation in contempt for failure to make support payments as ordered. The matter proceeded to a hearing before a hearing officer on January 25, 2016.

Boling presented evidence that Nation receives substantial income from an annuity. The terms of the annuity directed that Nation receive monthly payments of $1,000 from December 1991 through November 2011 and intermittent "spike payments" thereafter. Nation last received a "spike payment" in February 2012 of $125,000; the next one will be disbursed in February 2017, for $225,000, with a final payment of $450,000 due in 2022.

Boling also submitted two previous contempt orders entered against Nation for failure to pay support. She testified that in both instances Nation was able to pay the purge amount the next day. In the first instance, a relative paid the purge amount; in the second, Nation paid from the February 2012 "spike payment."

Nation testified that he is currently self-employed repairing four-wheelers. He submitted a financial affidavit reflecting a monthly income of $850 and monthly expenses of $1,903. Nation owns a 2004 Ford Explorer worth $3,000 and

a mobile home worth $5,000. When asked why he had not made payments, Nation answered that he was unable to, stating, "I don't have the money. If I had the money, I would pay." He further explained that business had "slowed down" and that "I'm gonna have to find me a job."

The hearing officer issued a recommended order finding that Nation owed $9,349.28 in arrearages and that he willfully failed to pay this amount while having had the ability to do so. The hearing officer recommended that Nation be adjudicated in contempt and incarcerated for 180 days or until he paid the full amount due. The circuit court adopted the hearing officer's recommendation and entered a final judgment of contempt, also imposing a judicial lien on the forthcoming 2017 payment of $225,000 to cover child support and attorney fees. A relative paid the purge amount the next day, and Nation was released.[*]

II.

A civil contempt order for nonpayment of support must include findings that the obligor willfully failed to comply with a prior court order for support while having the ability to make the established payments. See Fla. Fam. L. R. P. 12.615(d)(1). The court's finding regarding ability to pay will be sustained if it is

---

[*] Nation's release does not render this appeal moot. See Gregory v. Rice, 727 So. 2d 251, 252 (Fla. 1999) (holding that a habeas corpus petition filed by parent who was jailed for contempt for nonpayment of support was not mooted by the parent's release because the issue is "very likely to recur").

supported by competent substantial evidence. Elliott v. Bradshaw, 59 So. 3d 1182, 1185 (Fla. 4th DCA 2011).

The record here does not provide sufficient evidence to support the court's finding that Nation had the present ability to make payments as ordered. While the court set forth a number of sources from which it believed Nation could have made his payments, we find that in each case the source was either inadequate, had no factual basis, or is an asset Nation should not have been expected to liquidate.

The court first based its finding on Nation's "employment." However, the undisputed evidence showed that during the period in question, Nation was self-employed earning $850 per month. This was not enough to pay a monthly support obligation of $620, which amounted to 73% of his income. See Rihl v. Rihl, 727 So. 2d 272, 273-74 (Fla. 3d DCA 1999) (stating that support awards amounting to 73% of net income "have commonly resulted in reversal"); Decker v. Decker, 660 So. 2d 1162, 1163-64 (Fla. 4th DCA 1995) (ruling that the court abused its discretion in awarding wife alimony and child support constituting 76% of husband's income); Thomas v. Thomas, 418 So. 2d 316 (Fla. 4th DCA 1982) (reversing alimony and child support award that amounted to 58% of husband's net income).

The court also found that Nation had a "mobile home and land," but this finding is without a factual basis. The undisputed evidence demonstrated that

Nation does not own the land on which his mobile home is located. He consistently testified that the land belongs to his father, and Boling did not present any evidence to the contrary.

Third, the court found that Nation receives "annuity income" from which he could have made payments. However, the next scheduled annuity payment is for February 2017; until then, he will not receive any funds from the annuity. Moreover, any suggestion that he should have proceeds left over from the annuity payment in February 2012 is mere speculation and not evidence. Shelton v. Shelton, 965 So. 2d 179, 181 (Fla. 2d DCA 2007) ("The magistrate made a finding that the former husband 'should have' proceeds remaining from the sale of his home; however, the trial court abused its discretion in adopting that finding because it was based on speculation rather than evidence.").

Finally, the court pointed to Nation's mobile home worth $5,000 and truck worth $3,000. But the law does not necessarily require the liquidation of capital assets to satisfy support obligations. See Sussman v. Sussman, 915 So. 2d 281, 287 (Fla. 4th DCA 2005) ("Any additional obligation that the former husband must incur would require him to dip further into his savings or deplete his capital assets at an increased pace. This court has been loath to require such actions."); Kinne v. Kinne, 599 So. 2d 191, 194 (Fla. 2d DCA 1992) ("In any event, the law does not require that an ex-husband necessarily sell capital assets to pay alimony."). This is

5

particularly true in Nation's case, where the assets at issue are his home and vehicle and are of minimal value.

To the extent the judge believed Nation's family would provide money for his release, it was improper. See <u>Breitenbach v. Breitenbach</u>, 838 So. 2d 1266, 1268 (Fla. 2d DCA 2003) (stating that theory that husband had a present ability to pay an order by obtaining a loan from relatives was "outrageous") (citing <u>Perez v. Perez</u>, 599 So. 2d 682, 683 (Fla. 3d DCA 1992)). Moreover, Nation's past ability to make contempt payments should not be taken into consideration in this case. See <u>Keeler v. Keeler</u>, 66 So. 3d 1081, 1081 (Fla. 3d DCA 2011) (reversing trial court's finding that Keeler's ability to pay was "based upon his history of obtaining funds when needed" because the court improperly "focused on the past, not the present ability to pay").

Because the contempt order was not supported by sufficient evidence, we reverse the judgment of contempt and remand this case to the trial court. In doing so, we note that the trial court is not precluded from holding additional proceedings on this matter. See <u>Elliott</u>, 59 So. 3d at 1187.

RAY, KELSEY, and WINOKUR, JJ., CONCUR.